Brodie et al vs. Watkins and wife.

---

BRODIE ET AL V. WATKINS AND WIFE.

1. DAMAGES: *Measure of in breach of contract—Attorney and client.*
Where there is a special agreement for labor, services, or the delivery of goods at a stipulated value, and the party bound to the services or delivery is ready and willing to perform his part, but is wrongfully prevented by the other, the measure of damages is the profit which would have accrued to the party willing to perform, if the contract had been fully executed on both sides. And in cases of special contracts for legal services which are wrongfully prevented by the client, and where the attorney holds himself continually ready to serve, he may claim the whole compensation agreed on, subject to such abatement as would, in the natural course of things, have been incurred by him if the services had been continued.

*On motion to settle amount of Attorneys' fees,*

EAKIN, J.:

The property in this case sold for the sum of $10,000, which sum, in the adjustment of other attorneys' fees, has been taken without objection, as the amount recovered.

B. D. Turner, Esq., an attorney-at-law, on the 1st of June, 1877, filed an application in this court for a lien upon the fund for services rendered the appellees; stating that they had agreed to pay him ten per cent upon the amount collected; that, under the agreement, he instituted the suit, and rendered material services in the prosecution.

Objections are made by Greer & Baucum, assignees of the claim upon which the decree was rendered. They allege that Turner did not prosecute the suit to judgment, whereby they

34

were compelled to employ other attorneys, who have also filed liens for services ; that the claim is exorbitant and unjust ; and was not filed in the time prescribed by law,

The lien had been filed also in the court below, and no point is made by counsel as to time.

The testimony taken regarding this lien shows : That Turner was employed by Watkins to prosecute the suit under a special agreement to give him ten per cent on the amount collected. Turner drew the bill and commenced the suit in 1872 ; attended the Pine Bluff court in November ; filed an amendment to the bill, which, he states, was rendered necessary by disclosures in the answer ; made arrangements for taking depositions, and was engaged in the prosecution of the suit until early in October, 1873. Meanwhile litigation had grown up between Watkins and Turner regarding other matters ; and about the last named date, Watkins peremptorily discharged Turner as his attorney ; demanded of him the papers, and employed other attorneys. Turner expressed himself ready and willing to continue the case and fulfil his part of the contract, and from all that appears, has continued so since. Watkins says that he suspected Turner was not prosecuting the suit with diligence, but that he would not have discharged him but for the personal litigation which had arisen between them.

The duty of an attorney or solicitor, towards his client, and his obligation to regard the confidence reposed in him, should be wholly independent of, and above any personal affection or dislike ; and these cannot be supposed to affect his conduct. An attorney, with the highest appreciation of the honor and dignity of his profession, should rather, in case of a personal quarrel, be stimulated thereby to more zealous efforts in his client's behalf, and a more punctilious discharge of duty.

Where no want of fidelity is shown, a suspicion of it savors of insult ; and a discharge of an attorney on account of feel-

ings engendered by matters outside of his employment, is an injury to, or at least an imputation upon his professional honor, more grievous to a sensitive man than the loss of the particular business. Certainly it is desirable that the client should have for his adviser, one with whom he has pleasant personal relations. If Watkins had courteously represented this to Turner, upon the breach between them, and proposed a dissolution of their relation on that account, with an offer to settle fairly for services rendered, no difficulty would probably have arisen. He chose to dismiss him, and employ other attorneys. It would not have been delicate, after that, in Turner, to have interfered with the business in the hands of the other attorneys, and he was absolved from any further duties in that regard. He had, nevertheless, a right to stand upon the contract.

Where there has been a special agreement for labor, service, or the delivery of goods, at a stipulated value, and the party bound to the services or the delivery, is ready and willing to perform his part, but is wrongfully prevented by the other, the measure of damages is the profit which would have enured to the party willing to perform, if the contract had been fully executed on both sides. It is not necessarily or commonly the gross sum agreed to be paid. In many cases the damages are easily estimable. For instance, in the class of cases where successive deliveries of produce, or commodities, are to be made to a certain amount, within a fixed time, at a stipulated price, and the vendee refuses to receive them. There, the complainant can only recover the difference between the market price and the agreed price of the articles rejected, for that would have been the limit of his profit. And so when contracts have been made for the whole time of a person in any employment, and the services have been rejected. There the employee is held to make a fair and reasonable use of the time which belonged to the employer, and can only recover the

difference between what he received or might have received,. and the price agreed.   These propositions are sustained by the whole current of authorities in all the States, and commend themselves at once to the highest sense of justice and right. The criterion extends to all kinds of executory contracts, and the conflict of authorities arises upon the difficulty of its application to cases where the services are not easily partible.

Legal services are of this last named character.   They cannot be apportioned either by time, or the amount of physical labor expended in drawing papers, attending courts, and oral arguments.   It is the attorney's judgment, his learning, his responsibility and advice, which is relied upon, and which gives. the peculiar value to legal services.   Perhaps the most difficult and valuable services of the attorney may be rendered in considering his client's case, and giving him confidential information. before any visible act is done.   These are general considerations, to show that the professional services of an attorney cannot justly be apportioned by the plain and obvious. mode indicated above for cases of other classes.

A review of all the authorities, cited on both sides, leads the mind to the conclusion that in cases of special contracts for legal services, which are wrongfully prevented by the client,. and where the attorney holds himself continually ready to serve, the latter may claim the whole compensation, subject to such abatement as would, in the natural course of things, have been incurred if the services had been continued.   The value of the legal services proper, will not be apportioned ; but whilst, upon the one hand, the attorney will not be put upon the *quantum. mervit*, he ought not to recover more than he would have made if he had gone on with the case.   His *time*, however, does not belong wholly to his client, and no deduction can, in ordinary cases, be justly made on the presumption that it was wholly occupied in other professional business.   Such a case might

Brodie et al vs. Watkins and wife.

perhaps be made out, but it would be exceptional, and stand upon its own circumstances.

The attorneys who conducted the cause after Turner's discharge, are of high standing and known ability. They assumed the duties, under circumstances consistent with the highest sense of professional etiquette, and brought it to a successful termination. Whilst it may be supposed that Turner would have done as well, it cannot be presumed he would have done better, and we may take the case as a guide in estimating his pecuniary loss in some approximate manner.

After the discharge of Turner, the case was pending in the Jefferson Circuit Court during four terms. It would have been necessary for the attorney to attend that court at an expense of $25 or $30 a term. He would have been under the necessity of attending at this place at least twice at something about the same expense. Doubtless other incidental expenses would have been necessary, which he could not have charged to his client. An accurate account of these probable expenditures would be impossible, and the court, in the exercise of a fair discretion, upon the evidence presented, is of the opinion that a deduction of $200 would be proper.

Allow the lien for $800, and let it be paid out of the fund in the master's hands.