BERRY *v.* NICHOLS.

5-1121                                     298 S. W. 2d 40

Opinion delivered February 4, 1957.

*Charles L. Carpenter* and *J. Harrod Berry,* for appellant.

*Byron R. Bogard* and *Gerland P. Patten,* for appellee.

MINOR W. MILLWEE, Associate Justice. This is a proceeding by an attorney for an alleged breach of his contract of employment upon a contingent fee basis when his clients summarily discharged him and employed other attorneys in the settlement of their claims for damages arising out of an automobile collision.

On October 7, 1954, the appellees, Mr. and Mrs. T. H. Nichols, and their daughter, Jackie, who was then 18 years of age, were involved in a collision in North Little Rock, Arkansas, in which their automobile was struck from behind by a truck belonging to Virgil Young, doing business as Young's Fish Market. Jackie was merely shaken up, Mr. Nichols received minor injuries but Mrs. Nichols was more seriously hurt and their car was badly damaged.

Appellees operate a grocery store in North Little Rock and for several years prior to the collision had employed the appellant, J. Harrod Berry, in all legal matters. Appellant had previously represented Mrs. Nichols on a similar collision claim against L. M. Alexander on a contingent fee basis. He had also handled income tax and other matters for appellees as their regular attorney.

There is little dispute of the proof offered by appellant which tends to establish the following facts. The next day following the collision Mr. Nichols telephoned appellant and they engaged in an extended conversation in which it was agreed that appellant should represent appellees in settlement of their claims against Young on a contingent basis of one-third of any sums received before suit and 45% of all amounts received after suit.

At the time of the conversation Mrs. Nichols was confined to her bed within a few feet of the telephone. While she denied appellant's testimony to the effect that she joined in the conversation and consented to the employment, she subsequently accepted and acquiesced in appellant's services and participated with him in extended negotiations over a long period without complaint.

Immediately upon his employment appellant went to work on the claims and contacted the adverse party and his liability insurer by registered mail. He attended a traffic court hearing and held numerous conversations and conferences with appellees, their physicians and the insurer's representative relative to the claims over a period of several months. During this period he had about 40 telephone conversations with appellees and Mr. Nichols visited his office about 20 times in regard to the case.

Appellees were first treated by Dr. J. W. Shuffield, a bone specialist, who discharged them on December 29, 1954, as completely recovered. Appellant and Mrs. Nichols conferred with the doctor in his office early in January, 1955, and she was dissatisfied with his findings as to her condition. Appellant advised that she consult her family physician, Dr. Myers Smith, and Dr. Richard M. Logue, another bone specialist, and this was done. On February 7, 1955, Dr. Logue examined Mrs. Nichols and two days later reported to Dr. Smith that she had suffered a severe whiplash injury to her neck at the time of the accident. While he did not think any permanent disability would result he recommended use of a traction halter apparatus and stated that the headaches and other pain occasioned by the injury might last for a considerable period. It was about this time that the insurer rejected appellant's offer to settle for $3,000 and made a counter offer of $1,250 which was declined upon appellant's advice that negotiations be suspended for a time.

About April 1, 1955, it was agreed that negotiations for settlement should be resumed. Shortly thereafter Mrs. Nichols became unhappy when her family physi-

cian intimated that she was not in as bad shape as she thought and told her that she would feel better when the case was settled. Although she seemed to feel that appellant shared the doctor's views, Mrs. Nichols made no complaint directly to him about the matter. During the April negotiations the adjuster made an offer to settle for $2,000 which appellant submitted to appellees and they rejected. Mrs. Nichols felt her condition had worsened and, at appellant's suggestion, it was agreed that she would consult further with her doctors after which appellees would notify appellant to either resume negotiations or file suit. Appellant prepared a complaint, complete except for the amount of damages sought, which he left with appellees on a visit to their home on April 19, 1955, after they failed to appear at his office the day before. On that visit Mr. Nichols told appellant that Mrs. Nichols was too ill to see him but promised they would come to his office the next day and suggest a final offer of settlement to be submitted to the insurer before suit, and the amount to seek in the event suit was filed.

On April 20, 1955, appellees came to appellant's office and stated they were discharging him and employing their present attorneys under a written contract executed earlier that day which they exhibited to appellant. This contract recognized the prior employment of appellant by appellees and provided for a contingent fee to the new attorneys on terms substantially similar to those previously made with the appellant. It further provided that appellant should receive the first $666.66 of any fees received by present counsel under their contract. Appellant advised appellees of his unwillingness to enter into such arrangement, that he stood ready, willing and able to perform his contract of employment and that any compensation paid should conform thereto. When appellant inquired whether they would make immediate payment of the fee stipulated in the new contract Mr. Nichols replied: "Why, of course not. I don't aim to pay you anything."

After appellant's discharge negotiations for settlement were continued by appellees' present attorneys.

Mrs. Nichols again consulted Dr. Logue who placed her in the hospital where she remained in traction for 14 days in May, 1955. The doctor issued an additional medical report on May 25, 1955, which was made available to the insurer. Further negotiations for settlement continued without success until June 24, 1955, when present counsel filed suit against Young for damages allegedly sustained by appellees in the amount of $32,500 as a result of the collision. After the issues were joined present counsel made preparation for trial which was set for October 3, 1955, at a pretrial conference. Further negotiations with the insurer resulted in an offer to pay appellees $6,000 ($1,000 to Mr. Nichols and $5,000 to Mrs. Nichols) which was accepted and the money paid into court and impounded to await action upon appellant's intervention in which he sought a fee of 45% of the settlement under his contract. After appellees answered with a general denial it was stipulated that the intervention, together with appellant's claim for a percentage of an out-of-court settlement with Jackie Nichols for $250, would be tried by the special judge without a jury.

At the trial the testimony of the insurance adjuster corroborated that of the appellant as to the negotiations for settlement. He denied that appellant indicated any disposition to hurry a settlement and stated that the major factors causing his company to evaluate the claims upward after April 20, 1955, were the additional medical report by Dr. Logue, the increased medical and hospital expenses and the additional claim for loss of past and future earnings to Mrs. Nichols alleged in the complaint. He raised the settlement offer to $2,500 on the date appellant was discharged.

The discovery depositions of appellees taken by appellant were introduced by the former. While appellees contradicted the testimony of appellant on a few points, their answers were so evasive and contradictory as to render their entire testimony questionable from the standpoint of reasonableness and credibility. Although they seemed to be intelligent business people, they evaded direct answers and disclaimed recollection of matters

which the circumstances clearly disclosed to be within their certain knowledge.

The able trial judge found that the $250 settlement of Jackie Nichols was exempt from appellant's fee claim. While he felt that appellant was only entitled to a fee of $666.66 from appellees, this sum was increased to $833.33 at the suggestion of appellees' present counsel with $333.33 of the recovery apportioned to Mr. Nichols and $500 apportioned to Mrs. Nichols. In reaching this conclusion the court rendered an opinion in which he held it unimportant to determine whether appellant's discharge was with or without cause; that it was impossible to assume that appellant would have secured more than $2,000 had he been permitted to complete the contract without interference; and that since the increased settlement was produced by appellees' present attorneys, it would require speculation to conclude that a like disposition would have resulted if appellant's employment had continued.

The evidence sufficiently sustains the court's finding that Jackie Nichols never authorized the employment of appellant to prosecute a claim on her behalf. However the evidence is overwhelming that appellees wrongfully and without just cause discharged appellant thereby breaching the contract of employment. Under such circumstances, we are of the opinion that in fixing the damages the court erred in using as the sole measure thereof a percentage of the unacceptable offer of settlement made by the insurer shortly before the wrongful discharge.

The authorities generally are not in agreement as to the measure or basis of recovery by an attorney employed under a contingent fee contract who is discharged without fault on his part. In some jurisdictions the discharge of an attorney employed on a contingent fee basis is regarded as putting an end to the contract, so that any recovery of compensation must be exclusively upon *quantum meruit*. However, in perhaps a majority of jurisdictions, including Arkansas, it has been held that an attorney employed under a contingent fee

contract and discharged without fault on his part may recover damages as for breach of contract. Under these cases the measure of recovery usually is the contract price abated by such sum as would in the natural course of things have been incurred if the services had been continued. See 5 Am. Jur., Attorneys at Law, Secs. 182 and 202; 7 C. J. S., Attorney and Client, Sec. 169 a(2); and cases collected in 136 A. L. R. 231.

One of the leading authorities in support of the breach of contract theory is our own case of *Brodie* v. *Watkins,* 33 Ark. 545, 34 Am. Rep. 49, where the situation was similar to that presented in the instant case. In that case Turner was employed by Watkins to prosecute a suit upon an unliquidated claim on a contingency fee basis of 10 per cent of the amount recovered. Turner filed suit and was engaged in its prosecution when he was wrongfully discharged and other attorneys employed who recovered $10,000. In an action by Turner for breach of the employment contract the court held he was entitled to recover $800. This amount represented 10 per cent of the total recovery less $200 which the court estimated as the "probable expenditures" Turner would have incurred if his services had been continued. In reaching this conclusion the court said: "A review of all the authorities, cited on both sides, leads the mind to the conclusion that in cases of special contracts for legal services, which are wrongfully prevented by the client, and where the attorney holds himself continually ready to serve, the latter may claim the whole compensation, subject to such abatement as would, in the natural course of things, have been incurred if the services had been continued. The value of the legal services proper, will not be apportioned; but whilst, upon one hand, the attorney will not be put upon the *quantum meruit,* he ought not to recover more than he would have made if he had gone on with the case. His *time,* however, does not be-, long wholly to his client, and no deduction can, in ordinary cases, be justly made on the presumption that it was wholly occupied in other professional business."

The rule announced in the *Brodie* case has been followed in several later decisions including *Bockman* v.

*Rorex,* 212 Ark. 948, 208 S. W. 2d 991, where we again approved the following statement by Judge Eakin in the *Brodie* case: ''Legal services . . . cannot be apportioned either by time, or the amount of physical labor expended in drawing papers, attending courts, and oral arguments. It is the attorney's judgment, his learning, his responsibility and advice, which is relied upon, and which gives the peculiar value to legal services. Perhaps the most difficult and valuable services of the attorney may be rendered in considering his client's case, and giving him confidential information, before any visible act is done. These are general considerations, to show that the professional services of an attorney cannot justly be apportioned by the plain and obvious mode indicated above for cases of other classes.'' The court also observed that while it might be supposed that the first attorney would have done as well as those who actually made the recovery, it could not be presumed that he would have done better. By the same token it should not be presumed that he would not have done as well.

Insofar as this record discloses appellant faithfully, diligently and competently discharged his duties and responsibilities to appellees under the employment contract. Since it is clear that his discharge was wrongful, he is entitled to recover 45 per cent of the recovery of $6,000 less the probable expenditures he would have been required to make if his services had been continued. While we recognize the impossibility of rendering an accurate account of such expenses, we think a deduction of $300 would be proper under the circumstances. The judgment is accordingly modified by increasing appellant's fee to $2,400 and, so modified, the judgment is affirmed.