## William George MYERS *v.* Berta MUUSS, Daivd B. BEILER, and Gisela KANNADY

83-195                                            662 S.W.2d 805

### Supreme Court of Arkansas
### Opinion delivered January 9, 1984
[Rehearing denied February 6, 1984.*]

*William George Myers,* for appellant.

*Law Office of W. B. Putman,* by: *W. B. Putman* and *E. E. Maglothin, Jr.,* for appellee, Kannady.

---

*HOLLINGSWORTH, J., not participating.

*Everett & Whitlock,* by: *Robert L. Whitlock,* for appellee, Beiler.

*Charles E. Hanks,* for appellee, Muuss.

STEELE HAYS, Justice. Appellant, William George Myers, practices law in Fayetteville. In September 1981, he was retained by appellee, Berta Muuss, who claimed to be due an accounting for property entrusted to her daughter and son-in-law, appellees Davis and Bisela Beiler, who were contestants in a divorce suit. Myers was authorized to file suit for an accounting by the Beilers and to assist Mrs. Beiler's lawyer in the approaching trial of the divorce suit. He was to be paid $60.00 per hour and out-of-pocket expenses. He promptly filed suit for an accounting and actively assisted in preparation for trial of the divorce suit, which was non-suited on the eve of the trial, refiled, and later consolidated with the accounting suit.

In November, Mr. Myers submitted a statement for services and expenses, aggregating $1,355.40. Mrs. Muuss, a German national, could speak no English and she and Myers had difficulty communicating. For whatever reason, Mrs. Muuss became dissatisfied with Mr. Myers' representation and sometime before the consolidated suits were scheduled for trial on May 5, she dismissed Myers and employed other counsel. Mr. Myers contested his dismissal. He moved the court to fix his fee and impress a lien pursuant to Ark. Stat. Ann. §§ 25-301 and 302 (Repl. 1962), also filing lis pendens against real property involved in the divorce suit. Before trial, the Chancellor heard proof on Myers' status and found he had been discharged. Consideration of the other issues was deferred.

After trial, Myers renewed his demands for a lien and petitioned for a reopening of the case. The Chancellor heard testimony and argument on October 4, and declined to reopen the case, giving as his reasons the fact that none of the litigants was requesting reopening and there was no property against which to impress a lien.

Appellant lists thirteen assignments of error in his

statement of points relied on for reversal. However, in argument he departs from those statements of error and frames the issues in three broadly stated questions of law: (1) "What is the law of Arkansas pertaining to attorney liens and their enforcement?" (2) "Can an attorney in seeking to enforce his statutory lien properly file and maintain Lis Pendens as to the real property in the case as to which his client could have properly maintained a Lis Pendens notice of record prior to the final disposition of the case?" (3) "What are the duties, responsibilities, powers and authority of a trial judge in receiving, investigating and initiating appropriate disciplinary action as to complaints made to him of professional misconduct of attorneys practicing of record in specific cases before that trial judge?"

Appellant's brief is not in conformity with Rule 9 (c) of our rules, as general questions of law may not be substituted for a concise statement of points of error relied on for a reversal of a judgment or decree. However, in an effort to consider the appeal we will restate what we take to be appellant's assignments of error: (1) The Chancery Court erred in refusing to reopen the case for the purpose of enforcing appellant's lien; (2) in refusing to consider appellant's lis pendens; and (3) in refusing to hear appellant's complaint that opposing counsel was guilty of professional misconduct.

At the October 4 hearing, a number of witnesses were called by appellant in an effort to determine what, if anything, Mrs. Muuss had received in return for a dismissal of her complaint. The undisputed testimony established that she had acquired nothing from the dismissal of her claim. Mr. Myers candidly acknowledged to the trial court that he was not able to show any asset to which his lien might attach. Nevertheless, he argues on appeal that it was error to deny him his lien, though where or how it could be impressed is not explained.

Appellant cites us to cases generally giving a liberal construction to our lien statutes: *Home Insurance Co.* v. *Jones,* 253 Ark. 218, 488 S.W.2d 190 (1972); *Metropolitan Life Insurance Co.* v. *Roberts,* 241 Ark. 994, 411 S.W.2d 299

(1967); *Hamm* v. *Howard,* 216 Ark. 326, 225 S.W.2d 333 (1949); *Slayton* v. *Russ,* 205 Ark. 474, 169 S.W.2d 571 (1943); *St. Louis Iron Mtn. and So. Ry. Co.* v. *Hays & Ward,* 128 Ark. 471, 195 S.W. 28 (1917). In *Slayton,* Russ' suit against Slayton was settled by a direct payment of $50.00 by Slayton to Russ, without the knowledge and consent of Russ' attorneys. The trial court gave judgment against Slayton to Russ' attorneys in the amount of $318. Slayton argued on appeal that Russ' suit could not have succeeded. We rejected that argument (though recognizing it as the majority view), saying that after a suit is filed a settlement with the plaintiff without the consent of his attorney is "the only pre-requisite" to a right of the attorney to have his fee fixed under the statute, thus a defendant may not argue that the plaintiff's case is groundless where he had paid to settle the law suit.

Similarly, in *St. Louis Iron Mtn. & So. Ry. Co.* v. *Hays & Ward, supra,* the railroad settled a personal injury suit with the client of Hays & Ward by paying $5,000 directly to the client, without the knowledge of the lawyers. The law firm intervened in the pending suit, basing their lien on a contingent fee agreement, which the court upheld, impressing a lien upon the property of the railroad. We affirmed.

In *Metropolitan Life* v. *Roberts, supra,* the lien was upheld where an insurer paid a death claim directly to its insured, notwithstanding notice by the insured's lawyer, Roberts, that he represented the insured. In *Home Insurance* v. *Jones, supra,* the lien was disallowed where a settlement was reached between the insured and the insurer, but there we found the attorney for the insured had failed to give written notice of his representation. In each of these cases it should be noted that the settlements were based on the payment of money by one litigant to another, to the exclusion of the attorney for the party receiving the payment.

In 1940, the case of *Missouri Pacific* v. *Geurin,* 200 Ark. 755, 140 S.W.2d 691 (1940), was decided on the identical facts presented by this appeal, Geurin filed suit to recover $3,000

for personal injuries allegedly sustained while riding as a passenger on one of the defendant's trains. Geurin's contract with his lawyer provided for a contingent fee of one-half of any amount recovered. Shortly after suit was filed an insurance adjustor for the railroad obtained from Geurin, without his lawyer's knowledge or consent, an affidavit stating that he wanted his suit dismissed with prejudice and without payment to him of any remuneration. Geurin's lawyer petitioned for a reasonable attorney's fee from the railroad, which the trial court granted in the sum of $400. On appeal the railroad argued that Geurin's injuries were the result of a tavern brawl and that no monetary consideration was paid Geurin for the affidavit, he voluntarily dismissed his suit without compensation. We reversed, noting that it was undisputed that Geurin was paid nothing.

Appellant answers the *Geurin* case by pointing out that the ensuing session of the legislature further liberalized the lien statutes by the adoption of Act 59 of 1941, and later in the same session enacted Act 306 which inserted the words "if any" in the following clause:

> . . . and the amount of such fee or compensation shall not be necessarily limited to the amount, *if any,* of the compromise or settlement between the parties litigant. (our italics).

But we are not willing to treat the *Geurin* case, which reached a sound result, as overturned by such inconclusive wording as "if any." The purpose of the insertion is not that clear, it may simply have been intended to recognize that there are circumstances where no lien can be imposed, but the trial court may nonetheless award a fee under this statute, even though no monetary remuneration is given. This was the situation with respect to Roe Hamm in *Hamm* v. *Howard, supra.*

Appellant also argues that the Chancellor should have reopened the case, irrespective of the lack of assets, but we find no reversible error in that refusal. Without a showing that Mrs. Muuss received tangible assets in return for the dismissal of her claim, no useful purpose would be served by

reopening. Granted, appellant may have been entitled to a fee from Mrs. Muuss, based upon his contract, unsecured by a statutory lien, but that issue was never severed from the lien issue, the two were treated as one, and having failed to ask the Chancellor to specifically pass on that claim, appellant may not assert it in this appeal. See 4 C.J.S., *Appeal and Error*, § 320, p. 1021 and § 321, p. 1026.

Appellant's argument with respect to the lis pendens is that it would encourage concealment of assets aimed at frustrating an attorney's lien should we fail to hold that Ark. Stat. Ann. § 27-501 permits the filing of a lis pendens notice by an attorney asserting a statutory lien. But the point is abstract to the issues of this case — the rights of innocent purchasers have not intervened and we have often said we will not render advisory opinions. *Stafford* v. *City of Hot Springs*, 276 Ark. 466, 637 S.W.2d 553 (1982).

Finally, appellant believes the trial court should have addressed his complaint that opposing counsel were guilty of professional misconduct. The claim stems, evidently, from the fact that notice of the taking of depositions was not given Mr. Myers after other counsel began representing Mrs. Muuss. While we have recognized from the earliest times the inherent power of the trial court to oversee the conduct of attorneys practicing before it [See *Beene* v. *State*, 22 Ark. 149 (1860)], those powers were drastically altered by the adoption of Amendment 28, which states simply:

> The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law. Ark. Const. Amend. 28.

Whatever may be said of the complaint in this instance, it was not obligatory on the trial court to act, as recourse is open to appellant through the procedures of the Supreme Court Committee on Professional Conduct. Those procedures are thoroughly discussed in *Davis, et al* v. *Merritt, Chancellor*, 252 Ark. 659, 480 S.W.2d 924 (1972); *Armitage* v. *Bar Rules Committee*, 223 Ark. 465, 266 S.W.2d 818 (1954); and *Hurt* v. *Bar Rules Committee*, 202 Ark. 1101, 155 S.W.2d 697 (1941). The history and functioning of the Committee

on Professional Conduct are exhaustively reviewed by Professor Howard W. Brill in 33 Arkansas Law Review 572.

Other points are argued in appellant's reply brief, but as they were not discussed in his original brief, they may not be argued in reply. *Vincent* v. *Wesson,* 204 Ark. 1108, 166 S.W.2d 1023 (1942); *Commonwealth Pub. Serv. Co.* v. *Lindsay,* 139 Ark. 283 (1919). Appellees' motion for additional costs is denied.

The Chancellor is affirmed.

HOLLINGSWORTH, J., not participating.