HENRY, WALDEN & DAVIS *v.* Tony Gene GOODMAN

87-120                                    741 S.W.2d 233

Supreme Court of Arkansas
Opinion delivered December 7, 1987
[Rehearing denied January 13, 1988.*]

*Hays and Glaze, JJ., would grant rehearing.

*Jerry Cavaneau*, for appellant.

*Bill W. Bristow, P.A.*, for appellee.

*McMillan, Turner & McCorkle*, by: *Otis H. Turner*, for amicus curiae Arkansas Trial Lawyers Association.

JOHN I. PURTLE, Justice. The appellant law firm, which had been discharged by its client prior to the filing of suit, intervened in its former client's action for personal injury damages against a third party. The intervention sought to enforce a lien for attorney's fees upon the proceeds of any recovery by the client, the appellee herein. The appellant asked for one-third of the former client's recovery as specified in the contract of employment between appellant and appellee. The trial court held that the appellee's discharge of the appellant was not justified but that the appellant could only recover a reasonable fee for the services performed. On appeal, the law firm argues that it should have been awarded the full contingency fee as stated in the contract. On cross-appeal, the appellee seeks to reverse the trial court's holdings that he was not entitled to a jury trial on the question of the attorney's fees and that he did not have just cause to discharge the appellant. We find no prejudicial error and affirm the actions taken by the trial court.

The facts relating to the claim for an attorney's lien are the only facts necessary for an understanding of this case. On Friday, August 10, 1984, Tony Goodman, the appellee, was driving his automobile in the city of Jonesboro when it collided with a vehicle driven by Susan Franks. Goodman's vehicle was demolished and he received personal injury. The following Monday, August 13, 1984, he entered into a written contingency fee contract with the law firm of Henry, Walden & Davis, appellant herein, for the purpose of handling his interest in the matter. The appellant started an investigation immediately. The driver of the other vehicle was notified by letter dated August 14, 1984, that the appellant represented Goodman. Response to this letter was made by her liability carrier on August 21, 1984. The appellant notified the carrier of his contract and claim for a lien by letter of

October 4, 1984.

On October 4, 1984, Goodman discharged the first attorney, and entered into a second contingency fee contract with the law firm of McDaniel, Gott & Wells, P.A. The second contract also included a one-third (33⅓%) contingency fee. The second attorney informed Goodman he might be liable for two attorney's fees. The second firm filed suit for damages on behalf of Goodman and eventually obtained a judgment for $100,000. The appellant firm intervened in the proceeding demanding their full contingency fee of one-third (33⅓%) as specified in the contract between the appellant and Goodman, who contested the attorney's fee and demanded a jury trial.

The trial court ruled that Goodman was not entitled to a jury trial and that he had breached his contract with the appellant without good cause. The court determined that the appellant was not entitled to the contingency fee, but was entitled to a quantum meruit recovery of $2500 based upon work performed prior to discharge. The appellant law firm appeals from the denial of the full contingency fee, and Goodman appeals from the denial of a jury trial on the question and the determination that the discharge was without good cause.

In order to determine the issue of attorneys' fees in this case it is necessary first to examine the attorney's lien statute which is Ark. Stat. Ann. § 25-301 (Repl. 1962) (Acts 59 and 306 of 1941). This statute was enacted for the purpose of establishing the lien of an attorney upon the proceeds of his client's cause of action, thereby reducing the number of separate suits filed by attorneys. The first paragraph of the statute relates to the two methods by which an attorney's lien is actually created; the second paragraph provides the procedure for the enforcement of the lien once it comes into existence. *Home Insurance Co.* v. *Guy H. Jones*, 253 Ark. 218, 485 S.W.2d 190 (1972).

The first paragraph of the statute in part states: "The compensation of an attorney, solicitor, or counsellor at law for his services is governed by agreement, express or implied, which is not restrained by law." The statute then provides that after an attorney and his client serve written notice upon the adverse party, by registered mail, return receipt requested, informing the adverse party of the attorney's claim, the attorney shall have a

lien upon the proceeds derived from his client's cause of action. (The purpose of the registered notice is to establish delivery of said notice.) The lien thereby established in favor of the attorney attaches to the proceeds of any settlement, verdict, report, decision, judgment or final order in his client's favor. The statute further provides that such lien cannot thereafter be defeated by subsequent negotiation or compromise by any litigant, and states that the lien applies only to the cause or causes specifically enumerated in said notice. However, failure to notify the adverse party in accordance with the foregoing procedure is not fatal to establishing a lien by the attorney. The attorney may establish the lien by "commencement of an action" wherein the adverse party is made aware that the attorney claims a lien against any recovery by his client. See *Home Insurance Co. v. Jones*, supra. (Under present law, an action is commenced by filing a complaint with the clerk of the proper court. See ARCP Rule 3.)

The second paragraph of § 25-301 provides that in case any of the parties compromise or settle the claim without the consent of the attorney, after receipt of the written notice or after suit is filed, "the court of proper jurisdiction shall, upon notice, enter judgment for a reasonable fee or compensation against all of the parties to such compromise or settlement . . . and the amount of such fee or compensation shall not be necessarily limited to the amount, if any, of the compromise or settlement . . ." The third paragraph of the act extends the attorney's right of recovery for his fee to the parties' agents and attorneys who effected the compromise or settlement.

We addressed prior cases concerning the attorney's lien statute in *Myers* v. *Muuss*, 281 Ark. 188, 662 S.W.2d 805 (1984). There, after discussing *Home Insurance Co. v. Jones*, supra; *Metropolitan Life Insurance Co. v. Roberts*, 241 Ark. 994, 411 S.W.2d 299 (1967); *Hamm v. Howard*, 216 Ark. 326, 225 S.W.2d 333 (1949); *Slayton v. Russ*, 205 Ark. 474, 169 S.W.2d 571 (1943); *Missouri Pacific v. Geurin*, 200 Ark. 755, 140 S.W.2d 691 (1940); and *St. Louis Iron Mtn. and So. Ry. Co. v. Hays & Ward*, 128 Ark. 471, 195 S.W. 28 (1917), we concluded that "the trial court may nonetheless award a fee under this statute, even though no monetary remuneration is given." *Myers*, supra at 192. Moreover, in *Cato* v. *Arkansas Municipal League Health Benefit Fund*, 285 Ark. 419, 688 S.W.2d 720 (1985), we

stated that "the reasonable fee is not necessarily limited by the amount of settlement . . .," citing *Slayton* v. *Russ*, supra.

■ The attorney is not limited to an action against his former client in collecting his fee. He may proceed against any or all of the parties litigant. *Cato*, supra; and *Jarboe* v. *Hicks*, 281 Ark. 21, 660 S.W.2d 930 (1983). The attorney may also proceed against the parties' agents and attorneys, if they affected a compromise or settlement. A.S.A. § 25-301. In *Slayton* we held that a settlement without the attorney's consent, after the suit is filed, constitutes the only prerequisite to the right of an attorney to have his fee fixed under the statute.

■ The purpose of the statute is to establish a lien for attorney's fees, after the specified notice to the adverse party or parties, which attaches to the proceeds of any settlement, verdict, report, decision, judgment or final order. Moreover, the statute provides for recovery of the attorney's fee if the parties, or their agents or other attorneys, settle around the attorney. In such case the "judgment for a reasonable fee" may be against any of the parties litigant. Although the attorney's lien statute makes no distinction between a contingency fee and a fee based on other criteria, the statute does not require that the fee shall be anything other than reasonable. Under the circumstances of this case, the Arkansas attorney's lien statute does not mandate that the attorney recover the full fee stated in the contract.

■ The appellant argues that we should adhere to the rule announced in *Brodie* v. *Watkins*, 33 Ark. 545 (1878), and followed in *Berry* v. *Nichols*, 227 Ark. 297, 298 S.W.2d 40 (1957). Both of these cases held that an attorney employed under a contingency fee contract and discharged without just cause may recover damages as for breach of contract. This measure of recovery is the fee stated in the contract abated by such sum as would have been incurred if the legal services had been continued. These two decisions apparently rest upon the rationale that no distinction should be made between contracts for legal services and other contracts. We conclude that this rule is inconsistent with the intent of the attorney's lien statute and the important public policy which favors a client's right to discharge his attorney at any time. We therefore hold that the attorney is limited to a quantum meruit recovery for the reasonable value of

his services.

The relationship between the attorney and his client must be based upon the utmost trust and confidence, and if that basis has been substantially undermined, the relationship should be terminated. Model Rules of Professional Conduct Rule 1.16 provides that a lawyer may withdraw from representing a client "if withdrawal can be accomplished without material adverse effect on the interests of the client." The rule further provides that an attorney shall withdraw from the representation of a client if he is discharged. Provided such discharge does not relieve the client from his obligation to pay a reasonable attorney's fee.

The exercise of the right to discharge an attorney with or without cause does not constitute a breach of contract because it is a basic term of the contract, implied by law into it by reason of the nature of the attorney-client relationship, that the client may terminate that contract at any time. It would be an injustice to the client to hold him liable for both contingency fees for exercising that fundamental right. See *Fracasse* v. *Brent*, 494 P.2d 9 (Calif. 1972); and *Heinzman* v. *Fine*, 234 S.W.2d 282 (Va. 1977).

Overruling its prior decisions, the California Supreme Court in *Fracasse* found no injustice in a rule awarding a discharged attorney the reasonable value of the services he had rendered up to the time of discharge. The court noted that this rule preserves the client's right to discharge his attorney, and yet acknowledges the attorney's right to fair compensation for work performed. Apparently, an underlying assumption of this proposition is that the contingency has not been effected prior to discharge. See 92 A.L.R. 3d 690.

The California Supreme Court in *Fracasse*, quoting from an earlier California opinion, explained the reasons for the rule:

"The right to discharge is of little value if the client must risk paying the full contract price for services not rendered upon a determination by a court that the discharge was without legal cause. The client may frequently be forced to choose between continuing the employment of an attorney in whom he has lost faith, or risking the payment of double contingent fees equal to the greater portion of any amount eventually recovered. . . . Unless a rule is adopted al-

lowing an attorney as full compensation the reasonable value of services rendered to the time of discharge, clients will often feel required to continue in their service attorneys in whose integrity, judgment or capacity they have lost confidence."

We wish to emphasize at this point that contingency contracts for legal services are valid and enforceable, and when those services have been performed as contemplated in the contract, the attorney is entitled to the fee fixed in the contract and to the lien granted by the statute. A.S.A. § 25-301 and 302. Amicus contends that the decision today will have a "chilling effect" upon the utilization of the contingency contract in this state. In answer to this argument, the California court stated:

Nor do we believe that abandonment of the present rule will lead to a wholesale discharging of attorneys by clients motivated solely by a desire to save attorney's fees. To the extent that such discharge is followed by the retention of another attorney, the client will in any event be required, out of any recovery, to pay the former attorney for the reasonable value of his services. Such payment, in addition to the fee charged by the second attorney, should certainly operate as a self-limiting factor on the number of attorneys so discharged. To the extent such discharge occurs "on the courthouse steps," where the client executes a settlement obtained after much work by the attorneys, the factors involved in a determination of reasonableness would certainly justify a finding that the entire fee was the reasonable value of the attorney's services.

Having decided that A.S.A. § 25-301 does not authorize an attorney to recover the full contingency fee under the contract where, as here, the contract has not been fully performed, and having decided that the attorney is limited to the recovery of a reasonable fee for his services, we address the factors that should be considered in the determination of a reasonable fee. In *Jarboe* v. *Hicks*, supra, where the client settled without the consent of the attorney, we determined that the attorney, who was suing the adverse party, was entitled only to a reasonable fee. In discussing a reasonable fee, we stated that the factors that should be considered included the amount of time and

labor involved, the skill and ability of the attorneys, and the nature and extent of the litigation. It is clear in the present case that the trial court correctly took these factors into consideration in awarding the appellant a reasonable fee for the services rendered.

■ On cross appeal, the appellee asserts two constitutional violations concerning the trial court's decision denying him a jury trial on the question of whether he had just cause to discharge the appellant law firm. He argues that this decision of the trial court violated the equal protection clauses of the United States and Arkansas Constitutions and also violated the Arkansas Constitution's provision respecting the right to a jury trial. The appellee contends that he has been deprived of equal protection of the laws in that a class of citizens, namely lawyers, is being granted special privileges not available to other citizens in contract disputes. In *HCA Medical Services* v. *Rodgers*, 292 Ark. 359, 730 S.W.2d 229 (1987), we stated that the party challenging a statute on equal protection grounds has the burden of proving that the General Assembly did not have or could not have had a reasonable basis for making such a distinction. Moreover, if the law is neither unreasonable nor arbitrary, it will not be struck down as unconstitutional. *HCA Medical Services*, supra.

■ The attorney's lien statute (Ark. Stat. Ann. § 25-302 (Supp. 1985)) provides that *the court* before which said action was instituted or may be pending "shall determine and enforce the lien created by this Act." The appellee has failed to demonstrate that the General Assembly did not have a reasonable basis for providing for the enforcement of an attorney's lien upon the client's cause of action. Nor has the appellee demonstrated that the statute is unreasonable or arbitrary.

■ The appellee's second constitutional argument is that the statute violates Article 2, Section 7 of the Arkansas Constitution. Section 7 provides "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law . . ." Discussing the argument that the former attorney's lien statute was in deprivation of the right of trial by jury in *St. Louis I.M. & S. Ry. Co.* v. *Hays & Ward*, supra, we stated, "the constitutional right of trial by jury applies only to rights that existed at common law before the adoption of the Constitution, and does not apply to new rights

created by the legislature since the adoption of the Constitution." See also *Colclasure* v. *Kansas City Life Insurance Co.*, 290 Ark. 585, 720 S.W.2d 916 (1986), in which we held that a defendant in a mortgage foreclosure proceeding did not have a right to a jury trial because there was no such right at common law.

Finally, the appellee contends on cross-appeal that the trial court erred in finding that he did not have good cause to discharge his original attorney. The judgment of the trial court stated: "Tony Gene Goodman did not have just cause to discharge his attorney." There were no specific findings of fact, and none were requested. The record reveals that the first attorney immediately commenced investigating the case and obtained some benefits from the client's own carrier. The only complaints advanced by Goodman are that first party benefits had not been started and his own carrier was not aware that the insured vehicle was a total loss. We do not set aside the trial court's findings of fact unless clearly erroneous. ARCP Rule 52. Clearly erroneous has been defined by this Court: "a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Bogan* v. *State*, 293 Ark. 370, 738 S.W.2d 94 (1987). We are unable to hold that the trial court was clearly erroneous in finding that the appellee did not have just cause to dismiss the first attorney.

Under the circumstances of this case the trial court was correct in holding that the attorney was discharged without just cause and is entitled to a reasonable fee for the services performed prior to discharge. The trial court also correctly allowed the intervention by the discharged attorney to establish a lien for the attorney's fee pursuant to Ark. Stat. Ann. § 25-301 and 302 (Repl. 1962 and Supp. 1985).

The attorney's lien statute clearly was designed to insure that attorneys who represent clients on a contingent basis have an effective means of enforcing their right to compensation for services performed. Where the legal services have been fully performed as contemplated in a contingency fee contract, the attorney is entitled to the fee fixed in the contract and to the lien granted by the statute. By our decision today this Court does not hold or imply that contingent fee contracts are not valid and

enforceable agreements. When a written notice is given pursuant to the attorney's lien statute (25-301), or a pleading, giving notice of the claim for a lien, is signed and filed by the attorney, he has a valid and enforceable lien against the proceeds of his former client's recovery or against the other parties litigant, or their attorneys or agents, if the claim is settled without the consent of the former attorney. We simply hold that when a client discharges his attorney, as he has a right to do, he is bound to pay the discharged attorney a reasonable fee for the services rendered.

HICKMAN, J., concurs and HAYS and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. I dissent. I have no doubt that the majority court is sincere in its belief that justice would be served by its abandoning settled Arkansas case law in favor of a 1972 California decision on the issue of enforcement of contingent fee contracts. *See Berry* v. *Nichols*, 227 Ark. 297, 298 S.W.2d 40 (1957); *Brodie* v. *Watkins*, 33 Ark. 545 (1878); and *Fracasse* v. *Brent*, 6 Cal.3d 784, 494 P.2d 9, 100 Cal. Rptr. 385 (1972). The court's decision today, however, will assuredly and inevitably increase the instances of collusion and solicitation in cases and, for all practical purposes, destroy the use of contingency contracts. Under the majority holding, A can enter into a contingency contract with lawyer B, who diligently and professionally develops A's case for trial. Before trial, A may, without cause, dismiss lawyer B because lawyer C has offered to perform and complete the case for less money. Thus, instead of A being bound by the contingency fee contract signed by A and B, A, through his unilateral actions, effectively changed the parties' agreement to one based upon quantum meruit.

While the majority declares that its decision does not affect the validity and enforceability of contingency contracts, such contracts now will only be as good as a client wishes them to be. If presented with a better deal by a second or third attorney, why, if not bound by his or her contingent contract, would the client not opt for an arrangement to pay less for legal services? So what, one might ask, is wrong with that? The answer, I submit, lies in the unique purpose which is served by contingency contracts, *viz.*, such contracts provide people of modest means with an affordable way to prosecute their claims for injuries they have sustained; without contingency contracts, those parties will find it difficult to

employ competent counsel to protect their legal rights.

After this court changes the rules which affect agreements between attorneys and clients, I have no doubt that attorneys will design an agreement which will best protect their own interests when being employed to prosecute a claim. In the end, I have little doubt, as well, that persons (clients) of modest means will, in some measure, ultimately be required to pay for services rendered for the preparation and development of their cases *prior* to obtaining any recovery. Thus, while the majority believes public policy will be served by its decision, I believe the decision will impact adversely on the interests of the public, generally, and on persons of poor and modest means, specifically.

The irony presented by the instant case is that it presents a worst-case scenario where the appellee-client appeared to be obligated under two contingent fee contracts, each of which provided for a fee in the amount of one-third of the recovery. This resulted in the prospect that appellee was obligated to pay $66,000 in attorneys' fees out of a $100,000 recovery. I first would point out that the record clearly shows the appellee knowingly and voluntarily breached his contract with the appellant-law firm after being apprised of the enforceability of the contract by both appellant as well as the attorney who took over appellants' claim. In addition, appellee breached his agreement with appellants without legal cause or justification. Nonetheless, the court rewards such action by rewriting the parties' contract to benefit the appellee. I believe the majority court's sympathies are misplaced in favoring a party who breached an agreement under these circumstances. On the other hand, if a law firm fails to meet its contracted obligations, a party-client has his or her remedy, as in any contract case, to obtain a judicial declaration on whether the party can set aside the agreement and engage other counsel to pursue the claim. Apparently, the majority feels this is much too onerous a task to place on one who must hire and contract with an attorney.

In my opinion, the long-term effect of today's decision will not serve the best interests of the working and injured claimant in this state, much less the state's broad public policy. Accordingly, I would reject the view or rule expressed in the California decision that the majority now adopts, and, instead, adhere to the rule our

courts have followed since the court's holdings in *Brodie* v. *Watkins*, 33 Ark. 545, and *Berry* v. *Nichols*, 227 Ark. 297, 298 S.W.2d 40. Therefore, I would reverse this cause.

HAYS, J., joins in this dissent.