The Honorable David R. Matthews State Representative P.O. Box 38 Lowell, Arkansas 72745
Dear Representative Matthews:
This is in response to your request for an opinion concerning Act 716 of 1981, (A.C.A. § 14-168-201 et seq.), the "Arkansas Community Redevelopment Financing Act". Specifically, you indicate that the publisher's note to the act directs the Attorney General to file an action for a declaratory judgment as to the constitutionality of the act. You inquire whether such an action was ever filed, and if so, you inquire as to the holding of the court. If no court action was filed, you ask for an official opinion from this office as to whether the act is unconstitutional as an impermissible diversion of public school monies.
In answer to the first part of your question, no action for a declaratory judgment was ever filed by this office testing the constitutionality of the act. The filing of such an action without an actual case or controversy would have been tantamount to asking the court for an advisory opinion, which request it surely would have declined. Myers v. Muuss, 281 Ark. 188, 662 S.W.2d 805 (1984); Allen v. Titsworth,279 Ark. 138, 649 S.W.2d 185 (1983); McCuen v. Harris, 271 Ark. 863,611 S.W.2d 503 (1981). We will therefore undertake to answer your ultimate question, which is whether Act 716 of 1981 authorizes an unconstitutional diversion of public school monies.[1]
Act 716 of 1981 authorizes a procedure whereby a municipality may establish a redevelopment district to construct public improvements and alleviate "blighted areas". The act provides for the establishment of the district and the issuance of bonds to finance any public improvements to be undertaken. The bonds are funded by the tax revenues which are generated from the increased tax base. Specifically, the act uses a formula for calculating what portion of the general ad valorem tax revenues should go to fund the district's improvements. The act authorizes the setting of a "tax incremental base" which is the aggregate equalized value of all taxable property within the redevelopment district just before it is created. The crucial aspect of the act is that it channels the taxes derived from all increases in the tax incremental base after creation of the district to a special fund to retire the bonds issued to fund the redevelopment project. More specifically, A.C.A. § 14-168-212 provides in pertinent part as follows:
 (1) That portion of the ad valorem taxes which are produced by the levy at the rate fixed each year by or for each public body upon the tax incremental base shall be paid to each public body.
 (2)(A) That portion of the ad valorem taxes on real property in the district excluding taxes voted to retire school district bonds in excess of the tax incremental base, if any, shall be allocated to and when collected, paid into a special fund of the redevelopment project district to pay the principal of, the interest on, and any premiums due in connection with the bonds. . . .
It can be seen from the language above that general ad valorem taxes collected on real property, which are attributable to any increase over the tax incremental base, are targeted to repay the bonds funding the district. These taxes, at least those levied by the school districts, would otherwise be used to support the public schools, although there is an argument that these taxes would never have been collected if not for the improvements created by the district. Your question is whether this scenario violates Art. 14, §§ 2 and 3 of the Arkansas Constitution, (as amended by Amendments 11 and 40), which provide, respectively, in part as follows:
 § 2 No money or property belonging to the public school fund, or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs.
 § 3 . . . The Board of Directors of each school district shall prepare, approve and make public . . . a proposed budget of expenditures . . . together with a rate of tax levy sufficient to provide the funds therefore . . . . If a majority of the qualified voters . . . approve the rate of tax . . . then the tax . . . shall be collected as provided by law.
 Provided, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied. [Emphasis added.]
As noted earlier, there is no precise Arkansas case law on point, given the fact that no declaratory judgment action was ever filed as to the constitutionality of the act.[2]
Our research reveals many cases from other states involving the constitutionality of similar acts. See e.g. Meierhenry v. City of Huron, 354 N.W.2d 171 (S.D. 1984); Sigma Tau Gamma Fraternity House Corporation v. City of Menomonie, 93 Wis.2d 392, 288 N.W.2d 85 (1980); and Salt Lake County v. Murrary City Redevelopment, 598 P.2d 1339 (Utah 1979). Research also reveals several Attorney General opinions issued on the topic. See e.g. Virginia Opinion of the Attorney General issued May 22, 1988; Texas Opinions No. MW-337; and Oklahoma Opinion No. 87-13. These authorities are enlightening on the general topic, but do not precisely involve a constitutional provision similar to Arkansas Constitution Art. 14, §§ 2 and 3.
One case does involve a prohibition against spending school funds for other than school purposes. In Miller v. Covington Development Authority, et al, 539 S.W.2d 1 (Ky. 1976), the Kentucky Supreme Court was faced with the question of whether Kentucky's "Tax Increment Act" violated Kentucky's constitutional provision against spending monies collected for school purposes for any other purpose. The act involved in Miller operated differently from our Arkansas act, but the general purpose and outcome of the acts are the same. In Kentucky, a taxing district, such as a school district, could agree to "release" to the "Local Development Authority" for a period of up to twenty five years, not less than 50% nor more than 95% of all ad valorem tax revenues received from a development of project area in excess of those received from the same area in the last year before its establishment. The court held that this scheme violated the Kentucky Constitution, stating:
 The Tax Increment Act is even more clearly in violation of the constitution. Const. § 184 has always been construed as meaning that money collected for the purposes of education in the common school system cannot be spent for any other purpose, public or not. [Citation omitted.] It is no answer to say that the tax increments will be money the schools would not have had anyway, because the fact is that neither could this portion of the tax increments ever be realized except through taxes levied for and in the name of the common schools. It is also irrelevant, we think, that as a practical matter tax increment financing eventually will increase the revenues of a school district by enhancing its tax base, or that the redevelopment of depressed areas may increase the average levels of student achievement by improving the environment in which the students live. The stubborn fact remains that school taxes can be raised only for school purposes, and there is neither jot nor tittle in either of these two legislative acts, singly or together, that suggests the improvement of schools or the improvement of education as being among its objectives.
539 S.W.2d at p. 5.
With the above in mind, it is my opinion, although it may be a close question, that the act is constitutionally suspect. The tax dollars raised by the school districts from the increases in assessed value are, under our constitution, to be used for school purposes alone. The fact is that these taxes, even if it is admitted that they would not exist if it were not for the establishment of district,[3] are, under the act, to be allocated to retire the bonds issued in an effort to alleviate "blighted areas". This, in my opinion, simply cannot be construed as a school purpose. These taxes are levied and collected under the school millage, and thus cannot be used for other than school purposes. In the words of the Kentucky Supreme Court, this is a "stubborn fact" of our Constitution. It is my opinion that the conclusions of the Kentucky Supreme Court in Miller, noted above, would similarly be reached by our Supreme Court, if faced with the question.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
STEVE CLARK Attorney General SC:arb
[1] Because you specifically mention the diversion of public school monies as a ground under which the act may be challenged, and because in my opinion the act is suspect based upon this constitutional provision, our review is limited to this issue.
[2] We do have the benefit of some general Arkansas case law regarding the diversion of public school monies. In Rainwater v. Haynes,244 Ark. 1191, 428 S.W.2d 254 (1968) the Supreme Court stated that ". . . it seems clear that any use of those funds or property raised from taxation that results in benefits to those funds or property or aids in the stated purposes for which these funds may be expended would not be an unconstitutional diversion." 244 Ark. at p. 1195. The court in Rainwater held that a school district is not exempt from paying a special assessment to fund a street improvement district. It is my opinion, however, that because this case involves the levy of special assessments rather than taxes, it is inapposite to the issue at hand.
[3] It should be noted that the act allocates the taxes attributable to any increase in the tax incremental base (except those required to pay school bond issues) to the special fund to retire the redevelopment bonds. The act assumes that these increases are attributable to the project. Even if the tax base were to increase for an extraneous reason (e.g. inflation) the tax dollars attributable to the increase go to fund the redevelopment project.