**In re LIVING HOPE SOUTHEAST, LLC, Debtor.**

**No. 4:12–bk–11082.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Signed March 21, 2014.

630

632

Jeannette A. Robertson, Robertson Law Firm, Jonesboro, AR, for Debtor.

Robert W. Miller, Fred C. Statum, III, Justin Damon Wear, Michael E. Collins, Manier & Herod, Nashville, TN, for Trustee.

## ORDER APPROVING FEE APPLICATION

AUDREY R. EVANS, Bankruptcy Judge.

On October 2, 2013, the Court heard the *Amended Final Application for Payment of Attorneys' Fees and Reimbursement of Expenses* filed by Smith, Akins & Gladden, P.A. ("**Smith Akins**") (Dkt. # 250) (the "**Fee Application**") which amended the *Final Application for Compensation for Payment of Attorneys' Fees and Reimbursement of Expenses* filed by Smith, Akins & Gladden, P.A. (Dkt. # 247). The Court also heard the following: an *Objection to Amended and Final Application for Payment of Attorneys' Fees and Reimbursement of Expenses* filed by David Kimbro Stephens[1] on behalf of the A.K. Tennessee Irrevocable Trust (the "**A.K. Trust**") (Dkt. # 284); the *Objection to Amended Final Application for Payments of Attorneys' Fees and Reimbursement of Expenses* filed by Judy Simmons Henry on behalf of James J. Naples (Dkt. # 285) who is the successor-in-interest to Pinewood Enterprises, L.C. ("**Pinewood**");[2] a *Response to Objection of A.K. Tennessee Irrevocable Trust to Fee Application* filed by Smith Akins (Dkt. # 303); the *Response to Objection of Naples to Fee Application* filed by Smith Akins (Dkt. # 304); and the *A.K. Tennessee Irrevocable Trust Response to Applicant's Response to Objection to Fee Application* filed by David Kimbro Stephens on behalf of the A.K. Trust (Dkt. # 336). At the October 2, 2013 hearing (the "**Fee Hearing**"), Jim Smith, Allison Gladden, Kimberley Woodyard, and Denise Hoggard appeared on behalf of Smith Akins; Judy Simmons Henry and Charles T. Coleman appeared on behalf of James Naples; Kimbro Stephens appeared on behalf of the A.K. Trust; Michael E. Collins, the Chapter 11 Trustee, appeared on his own behalf; and Charles Tucker appeared on behalf of the United States Trustee. At the close of evidence, the Court took the matter under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C.A. § 157(b)(2)(A). The Court has jurisdiction to enter a final judgment in the case. This memorandum constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr.P. 7052; 9014.

---

1. Because many individuals named Stephens are involved in this case, those individuals—such as Kimbro or Greg Stephens—may be referred to by their first names in this Order.

2. Naples sold his membership interest in Pinewood effective December 31, 2012, but assigned to himself all causes of action, including the pending case against Debtor and others in Miller County Circuit Court which is the basis for any claim Naples has in this case. *See Order Denying Motion for Relief* (Dkt. # 450) entered on January 29, 2014.

The Court granted Naples's request to substitute for Pinewood with respect to pleadings filed before December 31, 2012, the effective date of the sale. The Court denied Naples's request to substitute for Pinewood with respect to pleadings filed by Pinewood after December 31, 2012. *See generally Order Denying in Part Motion to Substitute* (Dkt. # 316) entered on July 16, 2013. The objection to the Fee Application was filed by Naples as an individual.

## INTRODUCTION

The factual background and history of this Chapter 11 Debtor, as well as certain related entities and individuals, has been described extensively in the *Addendum to: Order Granting Motions to Appoint Trustee* (Dkt. # 293) entered on July 9, 2013 (the "**Addendum**") and other orders and opinions entered in this case.[3] The Court will not repeat that background here except to provide necessary context for the objections raised to the Fee Application.

The Debtor, Living Hope Southeast, LLC, filed bankruptcy on February 27, 2012, to continue operating while managing litigation in other forums. Smith Akins was approved to represent the Debtor effective June 13, 2012, the date of Smith Akins' application to be hired. *See Order Approving Application to Employ Attorney* entered on October 4, 2012 (Dkt. # 60). Smith Akins was hired over the objection of Pinewood after a two-day hearing held July 26–27, 2012.[4] As described more thoroughly in the Addendum, tensions arose between Debtor's counsel and certain parties attempting to control the Debtor in late 2012 and early 2013. The friction culminated in those parties— specifically, Kimbro,[5] and a board created to control the Debtor consisting of Greg Stephens (Kimbro's brother), Steve Ward (Kimbro and Greg's uncle), and Ken Ste-

phens (Kimbro and Greg's father)—attempting to terminate Smith Akins as counsel during a trial held before the Honorable James G. Mixon in a related adversary proceeding against the Debtor brought by Renee Williams, trustee of the Living Hope Southwest Medical Svcs, LLC Chapter 7 bankruptcy case (the "**Southwest Trustee**"). *Williams v. Living Hope Southeast (In re Living Hope Southwest)*, No. 4:09–ap–7023 (the "**Southwest AP**"). Judge Mixon did not allow Smith Akins to withdraw as counsel during the trial but later granted its motion to withdraw as counsel for the Debtor in the Southwest AP. These same events— the purported creation of a board for the Debtor, the firing of Smith Akins, and other actions taken by Kimbro and his brother Greg—led to motions to appoint a Chapter 11 Trustee for the Debtor in late January and early February 2013.

During this same time period, Pinewood filed a Motion for Leave to File Complaint on January 28, 2013, which sought permission under the Barton doctrine to file a complaint in U.S. District Court against Smith and his law firm (the "**Barton Action**"); Pinewood disclosed that it was simultaneously seeking leave from Judge Mixon to file the same complaint against the Southwest Trustee and

---

**3.** The Court takes judicial notice of all documents filed in the current case, including its prior orders and opinions. *See* Fed.R.Evid. 201; *In re Henderson*, 197 B.R. 147, 156 (Bankr.N.D.Ala.1996) ("The court may take judicial notice of its own orders and of records in a case before the court, and of documents filed in another court.") (citations omitted); *see also In re Penny*, 243 B.R. 720, 723 n. 2 (Bankr.W.D.Ark.2000).

**4.** On August 6, 2012, the Court entered an order approving the employment of Morgan E. ("Chip") Welch and Ashley Hudson of Welch, Brewer & Hudson, LLC, as Debtor's counsel but took the employment of Smith

Akins under advisement. *See Order Approving In Part Application to Employ Attorney* (Dkt. # 45). On December 31, 2012, the Court allowed Welch to withdraw as counsel because he had been elected Circuit Judge in Pulaski County. *See Order Approving The Motion to Withdraw of Morgan E. Welch* (Dkt. # 117).

**5.** The A.K. Trust owns a 99% membership interest in the Debtor, and the Kimbro Stephens Insurance Trust owns a 1% membership interest in the Debtor. The Kimbro Stephens Insurance Trust is an irrevocable trust whose beneficiaries are Kimbro's children.

her counsel. The Barton doctrine requires a party to obtain leave of the bankruptcy court that appointed a trustee before suing the trustee or the trustee's attorney in another forum for acts done in the trustee's authority as an officer of the court.[6] The Barton Action (which could not be filed unless the Court granted leave) asserted the following causes of action against Smith, the Southwest Trustee, and Tom Streetman (the Southwest Trustee's counsel), personally, in connection with their handling of the Southwest AP settlement and trial: (1) abuse of process; (2) conspiracy; (3) breach of fiduciary duty and waste; and (4) malicious prosecution and abuse of process. Smith hired private counsel to represent him and his firm. The motion for leave to file the complaint against Smith and his firm was set for hearing for February 14, 2013, but was orally withdrawn during the hearing to appoint a trustee held February 14, 2013, when it became evident that Naples's actions in personally suing a trustee, her attorney, and the DIP's counsel (for actions taken as attorneys and/or fiduciaries) were offensive to the Court because the Court viewed the Barton Action as an unprofessional, unacceptable trial strategy. The withdrawal of the motion for leave was subsequently documented by an order entered in this case on February 19, 2013.

On January 29, 2013, the day before the scheduled hearing on a Motion to Appoint a Trustee, the Debtor sought to substitute Jeannette Robertson for Smith Akins as Debtor's counsel (Dkt. # 148). Citing irreconcilable differences with the Debtor, principals of the Debtor, and persons purporting to be principals of the Debtor, Smith moved to withdraw as counsel on February 4, 2013 (Dkt. # 158). The Court did not allow the substitution of Robertson for Smith Akins pending its decision on the appointment of a trustee.[7] Hearings on the motions to appoint a trustee took place on February 14, February 18, March 8, and March 11 of 2013 (the **"Trustee Appointment Hearings"**). On April 19, 2013, the Court granted motions to appoint a Chapter 11 Trustee, and on May 2, 2013, the Court ordered the appointment of Michael E. Collins as the Trustee of the Debtor (the **"Southeast Trustee"**).[8] In

---

6. This Court previously described the Barton Doctrine as follows:

This rule is commonly referred to as the "Barton Doctrine" because its rationale was first set out in the case of *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881). The Barton Doctrine has uniformly been applied in the courts that have considered the issue. *See e.g., Carter v. Rodgers*, 220 F.3d 1249 (11th Cir.2000); *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236 (6th Cir.1993); *Ross v. Strauss*, 231 B.R. 74 (Bankr.W.D.Mo.1999); *In re Krikava*, 217 B.R. 275 (Bankr.D.Neb.1998). The Barton Doctrine also applies to counsel representing a bankruptcy trustee. *See Allard v. Weitzman*, 991 F.2d at 1241 ("We hold, as a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where as here, they act at the direction of the trustee and for the purpose of

administering the estate or protecting its assets."). *See also In re Krikava*, 217 B.R. at 278–79. In deciding whether to allow a suit to proceed against a bankruptcy trustee or his counsel, the appointing court may use its discretion but must first consider whether the plaintiff has set forth a prima facie case. *See In re Krikava*, 217 B.R. at 279. *In re Martin*, 287 B.R. 423, 434 (Bankr. E.D.Ark.2003).

7. *See Order Denying Motion to Expedite Ruling on Motion to Substitute Counsel For The Debtor* entered on March 1, 2013 (Dkt. # 192) (stating that the Court would not approve decisions made by those whose actions led to motions to appoint a trustee).

8. The only fees charged by Smith Akins after appointment of the Chapter 11 Trustee were for the drafting and revision of the fee application.

both the Addendum and the Court's April 19, 2013 *Order Granting the Motions to Appoint a Trustee,* the Court found the Debtor—through its purported board—terminated Smith because he honored his duty to the bankruptcy estate and its creditors as the Debtor's counsel rather than take instructions from individuals seeking to benefit the Stephens family. Despite Smith's efforts to withdraw, an order allowing Smith Akins to withdraw as the Debtor's attorney was not entered until June 21, 2013 (Dkt. # 269). As a consequence, Smith served as Debtor's counsel for four months under economically risky and professionally untenable circumstances.[9]

The Fee Application seeks reimbursement of attorneys' fees and expenses incurred by Smith Akins, as counsel for the Debtor-in-possession, for the period from November 1, 2012, to June 7, 2013.[10] The Fee Application originally requested fees in the amount of $57,787.90 and costs of $94.13 for a total of $57, 882.03. Because the U.S. Trustee objected Smith Akins agreed to reduce those fees by $10,250; the reduction included fees for having multiple attorneys present on the second, third, and fourth days of the Trustee Appointment Hearings.[11] *See* Dkt. # 283. The U.S. Trustee and Southeast Trustee do not object to the Debtor's Fee Application as reduced by the agreement with the U.S. Trustee. The application ultimately sought only compensation for those entries

which survived the scrutiny of the U.S. Trustee and the Southwest Trustee (a creditor) after applying the legal standard provided by 11 U.S.C. § 330(a). However, the A.K. Trust, represented by Kimbro,[12] and Naples, Pinewood's successor-in-interest, object to the Fee Application despite the agreed upon reduction. As explained herein, the Court finds those objections to be without merit and approves the Fee Application as reduced by agreement with the U.S. Trustee.

## LEGAL STANDARD

■ An attorney approved to represent a debtor-in-possession (the **"DIP"**) pursuant to 11 U.S.C. § 327 is allowed reasonable compensation under 11 U.S.C. § 330(a). In relevant part, § 330(a) provides:

(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 or 1103–

(A) reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trus-

---

9. After a hearing held July 18, 2013, the Court denied the Debtor's applications to hire Ms. Robertson. *See Order* entered August 28, 2013 (Dkt. # 358).

10. Fees incurred by Smith Akins for the period from June 13, 2012, to October 31, 2012, were approved by order entered December 21, 2012 (Dkt. # 112).

11. The Court's review of the Fee Application reveals that $8,600 was charged for Allison

Gladden and Kimberley Woodyard's attendance on the second, third, and fourth days of the Trustee Appointment Hearings. It is not clear what the remaining $1,650 reduction represented.

12. Kimbro informed the Court that Robert Williams who was the Trustee of the A.K. Trust had died and that Steve Ward was now acting as Trustee of the A.K. Trust.

tee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to ... [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B) [not applicable to a Chapter 11 case], the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

(B) In a chapter 12 or chapter 13 case....

(5) The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

11 U.S.C. § 330(a).

■■■ Thus, in order to be awarded reasonable compensation under § 330, the services rendered by approved counsel must be actual, necessary, and reasonably likely to benefit the debtor's estate or necessary to the administration of the case. *See generally In re Berg,* 268 B.R. 250 (Bankr.D.Mont.2001). "The burden of proof to show entitlement to fees is, in all fee matters, always on the applicant." *In re Yankton Coll.,* 101 B.R. 151, 157–58 (Bankr.D.S.D.1989). "This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by the debtor." *Id.* Fees and costs awarded pursuant to § 330 are afforded administrative expense priority pursuant to 11 U.S.C. § 503(b)(2).

## DISCUSSION

The Court has reviewed the Fee Application and finds the hourly rates charged and the itemization of services rendered to be reasonable. The A.K. Trust and Naples do not object to the hourly rates

charged or to any specific amount of time spent on matters, but raise general objections to awarding Smith Akins fees. The A.K. Trust's objection rests primarily on two grounds. First, the A.K. Trust maintains that the Debtor's estate should not be responsible for fees incurred after it terminated Smith Akins as counsel, and that it had the fundamental right to terminate its counsel without court approval. Second, the A.K. Trust asserts that the Debtor's estate should not be responsible for fees incurred by Kimberley Woodyard on behalf of Smith Akins because she was not specifically listed on the firm's application to be employed. The A.K. Trust maintains that Woodyard was not really "of counsel" at the firm, but was merely an attorney contracting with the firm. Naples raises similar objections. Additionally, Naples argues that Smith Akins did not make adequate disclosures in its Fee Application or in its initial application to be hired. Naples further argues that some of the fees incurred by Smith Akins were for actions in conflict with the directions of the Debtor's principals and therefore were not beneficial to the estate. Each of these arguments are addressed below.

### Adequacy of Disclosures

Naples asserts that Smith Akins failed to make adequate disclosures in its application to be hired as required by Bankruptcy Rule 2014. Specifically, Naples alleges that a potential conflict of interest was not disclosed; the amount of pre-petition fees charged and/or waived were not disclosed; and the application of fees to retainers paid by the Debtor were not fully disclosed.

Naples contends that Smith holds a previously undisclosed disqualifying conflict in that he filed a motion to dismiss Mike Grundy from the Southwest AP (the suit filed by the Southwest Trustee against the Debtor and others) in March 2009. Naples Exhibits 27 and 28. Pursuant to 11 U.S.C. § 328(c), the court may disallow compensation or reimbursement of expenses if a professional employed under § 327 is not a disinterested person, or represents or holds an adverse interest to the estate. *See also In re McGregory*, 340 B.R. 915, 923 (8th Cir. BAP 2006) ("[T]he Eighth Circuit has endorsed the notion, in the context of §§ 327, 328 and 330, that '[i]t is appropriate to deny or reduce compensation to a professional that represents a party ... who has an interest adverse to the bankruptcy estate.'") (quoting *In re Mahendra*, 131 F.3d 750, 759 (8th Cir.1997)).

Smith testified that he filed a motion to dismiss on Grundy's behalf in 2009 because Grundy was managing Living Hope Southeast and did not yet have his own counsel. Specifically, Smith explained:

> The [Southwest] Trustee sued a number of parties, the principals or the beneficiaries of Southwest—however Southwest was held; Kimbro Stephens, Alice Stephens, a number of their LLCs, and Living Hope Southeast, and Mike Grundy. Mike Grundy was the—variously described as chief operating officer, CEO, or president. I usually refer to him as president of Living Hope Southeast. We needed to get the answers or some kind of response filed timely. Grundy did not have counsel. I filed a—this is before South—on behalf of Southeast, this is all pre-petition, a motion to dismiss on behalf of Grundy. I discussed it briefly with Tom Streetman, the attorney for Renee Williams, and he voluntarily dismissed Mr. Grundy from that complaint. I thought it was necessary for Southeast since it [sic] was running it. And no one really knew what was going on.

Transcript at 25. Smith further testified that Grundy was not adverse to the inter-

ests of Living Hope Southeast at that time or since.[13]

The Court accepts Smith's explanation that he filed this pleading in the course of representing the Debtor pre-petition and finds that the filing of this pleading approximately three years before the Debtor filed bankruptcy is not a material omission on Smith's part.[14] Furthermore, there has been no showing that Grundy held or holds an adverse interest to the Debtor. Accordingly, the fact that Smith filed a motion to dismiss Grundy from the Southwest AP does not disqualify Smith as counsel for the DIP.

 Naples also questions whether all pre-petition fees paid or waived were disclosed. Smith explained that his firm was owed no balance from the Debtor based on pre-petition representation of the Debtor at the time Debtor filed bankruptcy. Smith testified that any outstanding fees owed were written off as is the custom amongst chapter 11 debtor's attorneys (to avoid a conflict of interest based on the attorney's status as a creditor). Smith's affidavit in support of the application filed by Smith Akins states this as well:

4. Prior to filing, Debtor was charged for work performed and expenses incurred with services performed pre-petition from 2009 to February **and the Debtor paid all amounts charged to them.** The Debtor paid us prior to the filing a retainer of $25,000. The Debtor has agreed that the retainer will be held by Smith Akins, P.A. and applied against post-petition fees, charges and expenses incurred in this case that are allowed by the Court. . . .

*Affidavit and Statement of James E. Smith, Jr. Pursuant to Bankruptcy Rule 2014 and 2016 in Support of Application for Employment of the Law Firm of Smith Akins, P.A., Exhibit A to Application to Employ Attorney* (Dkt. # 33) (emphasis added); Naples Exhibit 1. Naples's objection is that the exact amount of fees charged (or not charged, *i.e.,* written-off) were not disclosed in accordance with 11 U.S.C. § 329. Smith Akins's § 329 disclosure is contained in the Debtor's schedules and reflects that Smith Akins agreed to accept $30,000. Smith testified in the hearing on his application to be hired that the firm had been paid $5,000 for pre-petition bankruptcy services, and the affidavit attached to the employment application states that the firm had a $25,000 retainer.[15] The Court finds these fees

---

**13.** This Court previously found in its October 4, 2012 order hiring Smith that pursuant to § 327, an attorney may qualify as disinterested even if he represents an entity that is not disinterested, but that the attorney may be disqualified if he represents an interest adverse to the estate. At that time, the fact that Smith had filed a motion to dismiss Grundy from the Southwest AP was not disclosed. Rather, allegations were made that Smith had represented other insiders of the Debtor, including the A.K. Trust and Alice and Kimbro Stephens. The Court concluded that Smith had only represented the Debtor and not these insiders. *See In re Living Hope Se., LLC,* 495 B.R. 866, 874 (Bankr.E.D.Ark.2012). The Court further found that Smith was not disqualified based on his representation of the Debtor prior to the Debtor's bankruptcy

based on any personal involvement with certain distributions and payments made by the Debtor pre-petition. *Id.* at 877.

**14.** The Court finds the failure to disclose was not intentional. Presumably, the motion to dismiss Grundy was not disclosed in the application because either Smith forgot or just considered it part of his representation of the Debtor.

**15.** Smith was questioned on this exact issue during the July 26, 2012 hearing on Smith Akins's employment application:

> Smith: We received a total of 30,000 dollars from the debtor. 5,000 was expended prepetition, leaving us with 25,000 retainer going into the bankruptcy.
>
> Henry: That's not disclosed in this affidavit, correct?

were properly disclosed. There was no argument or evidence that any other fees incurred by the Debtor in connection with defending the Southwest AP or the Miller County litigation were in contemplation of bankruptcy; those fees and costs are not required to be disclosed by § 329. *See generally In re Zepecki*, 258 B.R. 719, 724 (8th Cir. BAP 2001) *aff'd*, 277 F.3d 1041 (8th Cir.2002) ("For a court to find that services are 'in contemplation' of bankruptcy, such court must find that the services are 'influenced by, and a direct result of, the imminence of the Debtor's filing.' ... The services should have more than a casual relationship to the bankruptcy proceeding.") (internal citations omitted).

Naples also questions how the $25,000 retainer held by Smith Akins has been spent. Smith testified that following the award of interim fees and costs to Smith Akins and Welch of $19,536.50, and a payment by the Debtor of $15,000, there remains $20,643.50 on retainer. Specifically, Smith testified as follows:

> Smith: The debtor was to pay the fee application. The order states that the debtor may pay the fee application immediately upon the entry. The debtor—I didn't get it. We used the retainer, which we would reserve for the final fee ap, because Mr. Welch leaving the bench—or leaving practice to go on the bench, to make sure he got paid before January 1. About a week and a half later, Mr. Grundy paid—I got a check for 15,000 instead of 19,000. We put that in our trust

account, and that is where the 20,000 comes from. 25,000 less 20—there's $20,463.53 in it—or 50 cents in it. 19,000 plus whatever hundreds, add up, it comes out we've got 5,000—20,500. It left 5,000 and some change, is what I'm trying to say. Paying Welch—

> Coleman: It left 5,000 and change that has not been paid; is that correct?

> Smith: That's—

> Coleman: Of your first fee ap?

> Smith: Yes, sir. And we just—we put the 15,000 that they paid us pursuant to that order, and that's all we got, and put that in the trust account and let it sit because I knew we were having this coming up. The order was clear the debtor was to pay us upon entry of the order approving the fees.

> Coleman: And so after you deduct the retainer, how much will you be seeking to recover as an administrative claim from this debtor?

> Smith: If I've got $20,463.53–50 cents in there, I'm asking for 47 thousand something, then it would be probably 26,000.

Transcript at 127–28.

The Court finds that Smith has fully explained the amount he has on retainer and how that amount was calculated. Naples's objection to the Fee Application on this basis fails.

> Smith: It disclosed what we had taken for the bankruptcy filing forward. That's the way we standard—standard do things. I believe you'll see that the schedules and statements reflect a payment of 30,000 total to the firm within the disclosure period.
>
> Henry: But the affidavit shows that you were paid prior to filing, 25,000 dollars, correct?

> Smith: I believe it—yes, the retainer was 25,000. Filing a retainer of 25,000. The difference between retainer and work billed and paid in the ordinary course of business—the ordinary course prior to filing.
>
> Transcript, July 26, 2012, at 103.

### Kimberley Woodyard's Fees

 Naples and the A.K. Trust object to Kimberley Woodyard's fees because she was not approved as counsel for the DIP when Smith Akins was. The U.S. Trustee examined Woodyard's fees and determined that the fees charged were for the period of time after which Woodyard became "of counsel" at Smith Akins and that such charges were both reasonable and necessary. Smith testified that Woodyard had worked for his office as a contract attorney but became "of counsel" on November 1, 2012, and that they had a memo on file setting forth the terms of her employment with Smith Akins. He further testified that she maintained an office at Smith Akins, has a phone in her office, and as far as he knew, represented no other clients besides those of Smith Akins. Smith explained that Woodyard is paid a percentage of fees billed and collected. Smith testified that after the Southwest AP trial, Woodyard filed a certificate of disinterestedness at the suggestion of the U.S. Trustee to clarify in the record her association with Smith Akins.

Smith's testimony about Woodyard's status as an attorney "of counsel" with Smith Akins is uncontroverted. Neither Naples nor the A.K. Trust offered testimony or documentation at the Fee Hearing to dispute Smith's testimony. Accordingly, the Court finds that Woodyard was associated with the firm and did not need to file a separate application to be hired as counsel for the DIP; her fees are approved. *See generally* Fed. R. Bankr.P.2014(b) ("If, under the Code and this rule, a law partnership or corporation is employed as an attorney, . . ., or if a named attorney . . . is employed, any partner, member, or regular associate of the partnership, corporation or individual may act as attorney or accountant so employed, without further order of this Court."); Fed. R. Bankr.P.

2016(a) (providing that "details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required."); 11 U.S.C. § 504(b)(1) ("A member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(2) or 503(b)(4) of this title with another member, partner, or regular associate in such association, corporation, or partnership, and may share in any compensation or reimbursement received under such sections by another member, partner, or regular associate in such association, corporation, or partnership.").

### Representation of Debtor–in–Possession

 The objections raised by the A.K. Trust and Naples primarily question whether the representation of Smith Akins benefitted the Debtor. Specifically, the objections question whether Smith Akins's representation was beneficial with respect to: the firm's handling of the Southwest AP trial and appeal; the Trustee Appointment Hearings; and the time charged in connection with the Barton Action. For the reasons described below, the Court finds that the Debtor's representation by Smith Akins benefitted the Debtor's estate.

#### The Southwest AP

In the Southwest AP, Judge Mixon awarded the Southwest Trustee a $1.19 million judgment because he found that the Debtor took over Southwest's business opportunities "beginning with the formation of Southeast in 2006 . . .". *Supplemental Order,* No. 4:09–ap–7023 (Dkt. # 130) (Bankr.W.D.Ark. Feb. 6, 2013), and *Order Approving Unsecured Claim,* No. 4:09–ap–7023 (Dkt. # 104) (Bankr. W.D.Ark. Jan. 18, 2013). During the Fee Hearing, Naples's counsel examined

whether Smith's representation was beneficial to the estate because he agreed to an early trial date in the Southwest AP, did not oppose the Southwest Trustee's motion for relief to proceed with the Southwest AP in Judge Mixon's court, and would not assist the Debtor in appealing the judgment awarded the Southwest Trustee in the Southwest AP.[16] Smith previously explained why his course of action in the Southwest AP benefitted the estate at the Trustee Appointment Hearing. The Court described and accepted that explanation in the Addendum at 47–53. Smith has consistently maintained that the Debtor needed to liquidate the Southwest Trustee's claim—a claim it agreed to settle twice before—in order to move forward with proposing a plan. Further, the Court accepts Smith's testimony that he stipulated to the valuation introduced by the Southwest Trustee in the Southwest AP trial because Naples had previously sought to introduce a valuation with a much higher value, and Smith—along with Grundy—believed the lower valuation to be accurate. Transcript at 135–37.[17] *See also* Addendum at 50, 52. Additionally, with respect to the Debtor's potential appeal of the Southwest AP judgment, Smith testified he told Grundy to hire special counsel, and that he did not think an appeal of Judge Mixon's ruling was in the Debtor's best interest.

The Court found Smith's testimony in the Trustee Appointment Hearing credible, and that conclusion has not changed since Naples and the A.K. Trust examined Smith at the Fee Hearing. Those controlling the Debtor simply abandoned the course of action to which they previously agreed when they decided it did not work for them. At all times, Smith and his firm continued to act in the best interest of the Debtor and the estate. Accordingly, the Court finds that the services rendered by Smith Akins in connection with the Southwest AP were beneficial to the estate.

### The Trustee Appointment Hearings

The A.K. Trust and Naples also object to Smith Akins's fees for attending the Trustee Appointment Hearings. The U.S. Trustee and Trustee do not object to fees for the appearance of multiple counsel (Smith, Woodyard, and Gladden) on the first day of those hearings, because the Barton Action had not yet been dismissed, but objected to the presence of more than one Smith Akins attorney for the second, third, and fourth hearing days. Smith Akins agreed to reduce its fees accordingly. Thus, the issue is whether the presence of Smith—who was not allowed to withdraw as DIP counsel—during the second, third, and fourth days of the Trustee Appointment Hearings was beneficial to

16. The assertions made by Kimbro in the *A.K. Tennessee Irrevocable Trust Response to Applicant's Response to Objection to Fee Application* (Dkt. # 336) largely rehash what was already decided in the *Order Granting Motions to Appoint a Trustee* and in the Addendum concerning Kimbro's attempt to intervene in the Southwest AP trial and the subsequent attempting firing of Smith by those persons attempting to control the Debtor. Kimbro's repeated assertion that Smith was simply unfamiliar with the facts underlying the Southwest AP defies logic; Smith represented the Debtor since the inception of the case, negotiated two settlements with the Southwest Trustee, and defended two appeals

of that settlement. The Court finds that Kimbro's claim that Smith was unfamiliar with the facts of the case and that Kimbro was needed to establish the truth is not a claim made in good faith.

17. Specifically, Smith testified that Grundy knew the valuation expert would testify, the contents of the expert's report, and his conclusions. Smith said that Grundy was "aware of his concern that the report, we could not improve upon the damage calculations prepared by the plaintiff's expert." Transcript at 137: 10–14.

the estate. Only Naples and the A.K. Trust argue his presence on those days should not be compensated by the estate.

Smith's position is that as Debtor's counsel, it was his responsibility to be there, and accordingly, it was reasonable for him to charge for that time. At the beginning of the first day of the Trustee Appointment Hearing, Smith stated:

> This may be the single most difficult statement I've ever made in court, given the tensions between the parties, with full awareness of my duties to Living Hope Southeast, my client, with full awareness of my duties to the creditors of Living Hope Southeast through my fiduciary—to my responsibilities, fiduciary in many instances, and with full knowledge of my duty to the equity security holders and junior classes of creditors, I would have to state that the pleadings I think, and attachments, speak for themselves. As attorney for the debtor, I do not think it would be possible for me—maybe someone more skilled might be able to—but I do not think under the current management structure of this company it would be possible to propose a confirmable or feasible plan of reorganization which fulfills the requirements of both the absolute priority rule and the best interest of creditors.

Transcript, February 14, 2013, at 18–19. At the Fee Hearing, Smith acknowledged that he did not otherwise participate or confer with his client during the Trustee Appointment Hearings. He also acknowledged that his client's representatives were not speaking to him. Smith testified he had conversations with the Southwest Trustee's counsel throughout the hearings, but he did not charge the Debtor for any of those discussions. Smith testified at the Fee Hearing that he felt an independent trustee was needed, and that his participation at the Trustee Appointment Hearing was "to ensure that—and consistent with my duties to the creditors, to ensure that Kimbro Stephens and Greg Stephens did not loot the company and that Mike Grundy managed it under competent supervision." Transcript at 126–27.

The Court finds that Smith's presence at the Trustee Appointment Hearings was beneficial to the estate. Although Smith sought to withdraw as counsel, and the Debtor sought to hire new counsel, the Court did not allow the substitution because to do so would have left the Debtor represented by counsel who was hired by those persons seizing control of the Debtor for their own benefit.[18] *See* Addendum at 7–8. Further, because Smith was present for the testimony and introduction of evidence those four days, a great deal of which concerned his actions and his role in what had transpired, he was able to testify as to his version of what had happened. The Court found that testimony crucial in piecing together what had actually transpired and in reaching its decision to appoint a trustee. For these reasons, the Court finds that Smith's presence during all four days of the Trustee Appointment Hearing was beneficial to the estate and is compensable under § 330(a).

*Fees for Defending The Barton Action*

Finally, the A.K. Trust asserts Smith Akins should not be awarded fees for monitoring the Barton Action filed by Naples because that benefitted Smith personally (he was to be sued personally) and not the estate.[19] The Fee Application includes

---

**18.** *See supra* note 7.

**19.** Smith does not seek reimbursement from the estate for any charges incurred to defend himself personally (*i.e.,* charges for his counsel).

644

charges for three counsel present on the first day of the Trustee Appointment Hearings when the motion for leave to sue Smith and his firm were set for hearing, as well as charges for Woodyard's travel to Texarkana for a court hearing on March 5, 2013 (8.8 hours at $250 an hour for a total of $2,200). Smith testified that he and Woodyard traveled to Texarkana to attend Judge Mixon's division day to ensure that the motion for leave to file a complaint against Streetman and the Southwest Trustee was dismissed. Smith did not charge his time for traveling or attending the hearing. Smith testified that the Debtor could not move forward until the effort to file a complaint against the Southwest Trustee was dropped (as described in the Addendum at 65–71, the parties were engaged in settlement negotiations during this time, but the Southwest Trustee would not agree to a settlement so long as the Barton complaint was pending against her). As the DIP's counsel-of-record, Smith had the duty to be present for all activities impacting the Debtor. Whether this Court or Judge Mixon would allow such a complaint to be filed against either Smith, his firm, the Southwest Trustee, or her counsel all impacted the Debtor, and the fees charged for this representation were both reasonable and beneficial to the estate.

### A Debtor–in–Possession's Right to Terminate Counsel

The A.K. Trust questions whether a DIP has the right to terminate its counsel, and whether the estate should be re-sponsible for fees incurred by counsel following its termination. The termination of Smith during the Southwest AP trial is described at length in the Addendum at 45–53. The Court concluded "that Smith was fired because he honored his duty to creditors as the Debtor's counsel rather than take instructions to benefit the Stephens family." Addendum at 29. That assessment has not changed. However, the Court reviews the arguments made by Kimbro on behalf of the A.K. Trust in order to explain that in this factual situation, the Debtor's principals do not possess an unfettered right to terminate DIP counsel without court approval.[20]

Kimbro asserts that the A.K. Trust, as the owner of a 99% membership in the Debtor, had the legal right to terminate Debtor's counsel with or without cause. Kimbro bases this argument on the following premises: that property interests are defined by state law; that rights of the parties are determined by state law; that the right to terminate counsel is not a property interest that is property of a bankruptcy estate; and that under Arkansas law, the right to terminate counsel is a fundamental right. Kimbro provided the following support for these legal premises.

In support of the premise that property interests are defined by state law (a universally accepted premise in bankruptcy law), Kimbro cites *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) and *In re Klein–Swanson*, 488 B.R. 628, 633 (8th Cir. BAP 2013) ("Property interests are created and defined by state

---

**20.** Kimbro's failure to respect the limitations placed on a DIP is the subject of an Order to Show Cause entered by this Court after learning that Kimbro filed a complaint in federal court on behalf of the Debtor without authority to act on behalf of the Debtor as counsel, and entered into a settlement agreement agreeing to a judgment against the Debtor that also created a constructive trust on the Debtor's assets. *See Order to Show Cause* entered February 22, 2013 (Dkt. # 186). In an effort to resolve substantive issues related to the Debtor and the administration of this case, as opposed to ethical and professional issues related to individuals, the Court has delayed setting a hearing on the Order to Show Cause.

law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Reagan v. Regions Bank (In re Wetzel)*, 649 F.3d 831, 834–35 (8th Cir. 2011)). Kimbro cites *White v. Coyne (In re Pawlak)*, 483 B.R. 169 (Bankr.W.D.Wis. 2012) in support of his proposition that parties' rights are determined by state law.

Kimbro relies on *In re Blackburn*, 448 B.R. 28, 36 (Bankr.D.Idaho 2011) to show that the right to terminate counsel is not a property interest that is property of a bankruptcy estate. In *Blackburn*, the Chapter 7 Trustee sought to discharge debtor's counsel and recover any unearned retainer. The court stated:

> ... Trustee has provided no case authority to support his position that Debtors' right to terminate the Law Firm's representation should be characterized as property of the estate. The relationship between client and attorney is a personal one—one of trust, confidence, and mutual cooperation.... For this reason a client has the right to discharge an attorney at any time, with or without cause.... This right to freely choose and discharge one's attorney is a personal right, rather than a property right, and the Court concludes it is not therefore "property" of the bankruptcy estate. The Court rejects the notion that Trustee could step in and terminate the Law Firm's representation of Debtors in this case.

*Id.* (internal citations omitted).

Kimbro provides the following authority to show that under Arkansas law, the right to terminate counsel is a fundamental right. *Gentry v. Richardson*, 228 Ark.

677, 309 S.W.2d 721, 723 (1958) ("It is a fundamental characteristic of the attorney-client relation that the client always has the right to control the litigation and the consequent power to discharge the attorney, with or without cause.") (citing *Johnson v. Mo. Pac. R. Co.*, 149 Ark. 418, 233 S.W. 699 (1921)). Kimbro also quoted *Johnson*:

> [T]here can be no doubt of the right of a client to discharge an attorney who fails to prosecute the cause with reasonable diligence, for that is clearly the measure of an attorney's duty to his client. Any other rule would require a client to retain an attorney who was neglecting the cause and failing to proceed with proper diligence.

*Johnson* at 702.

Kimbro also cited Model Rule of Professional Conduct 1.16 which states: "A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." Finally, Kimbro relied on *Henry, Walden & Davis v. Goodman*, 294 Ark. 25, 31, 741 S.W.2d 233, 236 (1987) which stated:

> The relationship between the attorney and his client must be based upon the utmost trust and confidence, and if that basis has been substantially undermined, the relationship should be terminated. Model Rules of Professional Conduct Rule 1.16 provides that a lawyer may withdraw from representing a client "if withdrawal can be accomplished without material adverse effect on the interests of the client." The rule further provides that an attorney shall withdraw from the representation of a client if he is discharged. Provided such discharge does not relieve the client from his obligation to pay a reasonable attorney's fee. The exercise of the right to discharge an attorney with or without

cause does not constitute a breach of contract because it is a basic term of the contract, implied by law into it by reason of the nature of the attorney-client relationship, that the client may terminate that contract at any time. It would be an injustice to the client to hold him liable for both contingency fees for exercising that fundamental right.

Based on this careful selection of authority holding that a client can terminate its lawyer, Kimbro argues that a DIP—like any other client—should have the attorney of its choice. He argues this is not only a fundamental right but an absolute right and the Court must respect the DIP's decision. Again, Kimbro reiterates that property interests are defined by state law, unless some federal interest requires a different result, and he maintains there is no federal interest here, and that the Debtor had the right to fire its counsel and

did not lose that right merely because it filed bankruptcy.

 The Court does not question the specific premises relied on by Kimbro, or that they may generally apply to debtors who have filed bankruptcy under other chapters where the Court is not required to vigorously examine the attorney's relationship to the debtor and approve the attorney's employment.[21] However, Kimbro ignores the obvious federal interest here—the federal bankruptcy system. Kimbro also ignores certain fundamental bankruptcy principles that control a DIP in a Chapter 11 case. One such fundamental principle is that the DIP itself is a fiduciary for the bankruptcy estate (including creditors, equity interest holders, and other possible interested parties). *See generally In re Brook Valley IV,* 347 B.R. 662, 672 (8th Cir. BAP 2006) *aff'd sub nom. In re Brook Valley VII, Joint Venture,* 496 F.3d 892 (8th Cir.2007).[22] It is

**21.** Section 327 governs the employment of professionals, such as attorneys, by a trustee. Because a Chapter 11 DIP performs the duties of a trustee, counsel for the DIP is hired pursuant to § 327. Only counsel hired under § 327 or § 1103 (re committees) are entitled to compensation from the estate under § 330(a)(1). *See Lamie v. United States Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Attorneys for a Chapter 7 or Chapter 13 debtor are not subject to the same approval process (unless hired for a special purpose pursuant to § 327(e)), although disclosures regarding their compensation must be made under § 329 and Fed. R. Bankr.P.2016(b). Where compensation is to be paid from the estate, the court reviews the reasonableness of such compensation. *See e.g., In re Courtois,* 222 B.R. 491, 494 (Bankr. D.Md.1998) ("Although counsel to the debtor in a Chapter 13 case is not a professional for the estate whose employment requires prior approval by the court, and fees paid by the debtor do not require prior approval by the court, the bankruptcy court has the 'express power to review payments to attorneys for excessiveness' pursuant to section 329 of the Bankruptcy Code and Bankruptcy Rule 2017.").

**22.** *Brook Valley* also cites:

*Fulton State Bank v. Schipper (In re Schipper),* 109 B.R. 832, 835 (Bankr.N.D.Ill. 1989) ("[a] debtor-in-possession holds its powers in trust for the benefit of the creditors and has the duty to protect and conserve property in his possession for their benefit"), *aff'd* 933 F.2d 513 (7th Cir.1991); *In re Intermagnetics America, Inc.,* 926 F.2d 912, 917 (9th Cir.1991) ("[o]fficers of a debtor-in-possession are officers of the court because of their responsibility to act in the best interests of the estate as a whole and the accompanying fiduciary duties."); *Ramette v. Bame (In re Bame),* 251 B.R. 367, 373 (Bankr.D.Minn.2000) ("it is clear that a DIP has a duty to creditors of the estate not to waste the estate's assets"); *In re Q.P.S., Inc.,* 99 B.R. 843, 845 (Bankr. W.D.Tenn.1989) (holding that a Chapter 11 debtor-in-possession is a fiduciary); *In re Modern Office Supply,* 28 B.R. 943, 944 (Bankr.W.D.Okla.1983) (holding that creditors have the right to require the debtor-in-possession to exercise their fiduciary powers for their benefit).

347 B.R. at 672, n. 18.

the DIP counsel's role to make sure that the DIP "understands its [fiduciary] role and acts accordingly." C.R. Bowles, Jr. & Nancy B. Rappoport, *Debtor Counsel's Fiduciary Duty: Is There a Duty to Rat in Chapter 11?*, Am. Bankr.Inst. J., February 2010 at 64.

▉▉▉▉ Another fundamental principle applicable to a Chapter 11 DIP is that DIP counsel represents the DIP, not its principals or management.[23] In fact, compensation for counsel should be denied if the services benefit the debtor as opposed to the estate. *See In re Kohl,* 95 F.3d 713, 714 (8th Cir.1996) (citing *In re Reed,* 890 F.2d 104, 106 (8th Cir.1989)). " 'This rule is based upon the legislative history of Bankruptcy Code section 330(a) and the unfairness of allowing the debtor to deplete the estate by pursuing its interests to the detriment of creditors.' " *Id.* (quoting

*In re Hanson,* 172 B.R. 67, 74 (9th Cir. BAP 1994)). *See also Matter of Zweig,* 35 B.R. 37 (Bankr.N.D.Ga.1983) (debtor's counsel denied fees for services which produced benefit to the debtor but not to the estate); *In re Clayton Grain Elevator, Inc.,* 30 B.R. 760 (Bankr.W.D.La.1983) (corporate debtor's counsel denied fees for services benefitting shareholders with only secondary effect on debtor).[24]

Although the principles asserted by Kimbro generally apply to attorney-client relationships, the federal bankruptcy principles applicable to Chapter 11 DIPs control this case. A Chapter 11 DIP does not have an unbridled right to hire and fire counsel as it chooses if that decision is based on the personal interests of the DIP's principals instead of the best interests of the estate. Further, when those controlling the DIP had Grundy terminate Smith, Smith moved to withdraw. It was

23. Some courts hold that DIP counsel owes fiduciary duties to the estate while others hold that DIP counsel owes duties to the DIP who then owes fiduciary duties to the estate. *See* Bowles & Rappoport, *supra,* at 16, n. 13–14 (citing *Brown v. Gerdes,* 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659 (1944) (counsel in bankruptcy cases seeking compensation from court are held to fiduciary standards)); *ICM Notes Ltd. v. Andrews & Kurth LLP,* 278 B.R. 117, 126 (S.D.Tex.2002), *aff'd,* 324 F.3d 768 (5th Cir.2003); *In re Taxman Clothing Co.,* 49 F.3d 310 (7th Cir.1995); *In re Perez,* 30 F.3d 1209 (9th Cir.1994); *In re JLM Inc.,* 210 B.R. 19, 26 (2d Cir. BAP 1997) (holding both management and debtor's counsel have fiduciary duties to bankruptcy estate in chapter 11 case when debtor's counsel disobeyed new management directions and objected to attempt to dismiss case where new management was unperfected secured creditor seeking to secure its position to detriment of bankruptcy estate). *But see* Alec P. Ostrow, *We Don't Need the Case Law to Turn the DIP's Attorney into a Court Informant,* Am. Bankr.Inst. J., May 2008, at 14 ("[I]t does not follow that the attorney owes a fiduciary duty to the estate. The district court in *Hansen, Jones & Leta PC v. Segal [,* 220 B.R. 434 (D.Utah 1998), *rev'g in relevant part, In re Bonneville Pac. Corp.,*

196 B.R. 868 (Bankr.D.Utah 1996)] rejected the syllogism employed by a majority of the courts, noting that the attorney's duty of loyalty is to the client and that duty includes the duty to maintain client confidences.").

24. To further illustrate the difficulty that DIP counsel faces, the Court quotes Bowles and Rappoport again:

To steal Dave Barry's catchphrase, we are not making this up. . . . We are not making up the fact that management of the DIP can sometimes lose sight of the fact that maximizing and reorganizing the estate, not self-preservation of management's perks, is the point of chapter 11. We do not mean to create an automatic adversarial relationship between the DIP and DIP counsel; most of the time, we expect DIP management to do the right thing and not worry about the risk of DIP counsel's duty to rat. We do mean to say that for those for whom chapter 11 operates not as a handbreak but as a piggybank, DIP counsel must act as an extra check on the integrity of the bankruptcy process. The estate, and all constituents who expect to draw from it, deserve no less.

Bowles & Rappoport, *supra* at 65.

the Court that did not allow him to do so at that time due to the extenuating circumstances which led to the Court appointing a trustee.

▅▅▅ Furthermore, not only does DIP counsel represent the estate as a whole, bankruptcy counsel owes a duty to the Court due to the significant involvement a court has under the Bankruptcy Code to oversee the attorney-appointment process and continued disinterestedness of attorneys representing DIPs. *Id.* (citing *Brown v. Gerdes*, 321 U.S. 178, 182, 64 S.Ct. 487, 88 L.Ed. 659 (1944) (bankruptcy counsel held to fiduciary standard because retention and fees subject to court approval)). "Because the DIP itself generally is run by people who decidedly are not disinterested, it is the disinterested DIP counsel who must look beyond the wishes of the DIP's management team to the overall needs of the estate and its ultimate residual owners." Bowles & Rappoport, *supra* at 64. Bowles and Rappoport argue that this heightened duty to the estate as a whole

and to the Court imposes on DIP counsel the duty to "rat" any wrongdoing by those running the DIP.[25] Recognizing that the dual duties imposed on DIP counsel along with existing ethical limitations places the DIP counsel in a most difficult position, Bowles and Rappoport assert that the proper course is for DIP counsel to try its best to persuade those controlling the DIP to take a proper course of action, and

> [i]f nothing works, then you may have to ask the court to replace management or seek to withdraw as counsel. That should signal a problem without running the risk of over-disclosing confidences. If management opposes these actions, then you may have to disclose more information to the court or—worse yet— suggest the appointment of a trustee.

Bowles & Rappoport, *supra*, at 65.[26]

▅▅▅ Smith followed a similar course of action, as is more fully described in the Addendum at 45–53. As Smith became aware of the new "board" taking control of

---

**25.** Another author argues that there are enough safeguards in place to protect the integrity of the judicial system, and there need not be a judicially-created rule to force DIP counsel to inform a client's wrongdoing, especially if it does not relate to the DIP's fiduciary capacity. *See* Ostrow, *supra*, note 23, at 14. In this case, a DIP counsel's duty to inform the Court of the DIP's wrongdoing is not an issue—Smith was questioned by Naples's counsel during the Fee Hearing about when he learned of the board created to take control of the Debtor. He responded that he was sent a draft of the agreement creating the board in August, and he questioned Greg's attorney about it and was told it was just a draft and he should disregard it. He explained that he took the attorney at his word and the existence of a board was not brought up again until January 2013. Transcript at 67–75. Other than this line of questioning, Naples's counsel only hinted in closing that perhaps Smith should have done more to stop insiders from taking over the Debtor.

**26.** *See also In re Berg*, 268 B.R. 250, 261–62 (Bankr.D.Mont.2001) where the court stated:

An attorney will encounter difficult cases and difficult clients, but as a professional, an attorney must instruct the debtor on appropriate conduct and must develop client control. To foster such client control, an attorney must be: knowledgeable about the law; willing to communicate promptly with the client about all matters associated with the client's case; instructive on what alternatives and remedies are available to the client; knowledgeable about the parameters and limits of available alternatives and remedies, *and unwilling to allow a client to direct or dictate the progress or activity in a case, if such activity is inconsistent with the requirements of the law. If an attorney believes a client is unwilling to listen and follow the advise of counsel, then the attorney must consider whether he/she is able to continue representing the client.*

(Emphasis added.)

the Debtor, he threatened to resign. He informed the parties controlling the Debtor that the board was not legitimate. Nevertheless, those parties and Grundy agreed to move forward with the Southwest AP trial with Smith Akins as counsel (*see* Addendum at 42), and then those persons seizing control of the Debtor directed Grundy to terminate Smith Akins during the trial. Upon being terminated, Smith sought to withdraw as counsel for the trial but Judge Mixon did not allow him to do so. Then, Kimbro and Greg attempted to have a constructive trust placed on the Debtor's assets by way of an agreed order in the Miller County litigation. As facts regarding that agreed order were brought to light, Smith moved to withdraw as DIP counsel, and motions were filed to appoint a trustee based, in part, on those facts. Once the hearing on the motions to appoint a trustee began, Smith informed the Court he felt a trustee was needed. Smith did exactly what he was required to do— he tried to persuade those controlling the Debtor to do the right thing; he moved to withdraw; and he informed the Court a trustee was needed. After four days of hearings, the Court agreed, finding that

a trustee must be appointed in this case to serve as a neutral fiduciary and the estate's sole representative due to the distrust created by the various actions of Kimbro and Greg, their disrespect for the Debtor's fiduciary duties to all its creditors, the acrimony that exists between the Debtor and its creditors, particularly the Southwest Trustee, and the dishonesty and lack of transparency as to who controls this Debtor.

*See Order Granting Motions to Appoint Trustee* (Dkt. # 220) at 14.

Naples and the A.K. Trust seek to disallow the payment of attorney fees and costs to Smith and his firm because he did not follow the directions of management who sought to further the interests of Kimbro and others over those of the estate. The facts underlying the objections raised by the A.K. Trust and Naples are the same facts this Court found created the need for the appointment of a Trustee. The Court finds these objections are unwarranted and that those controlling the Debtor did not have the right to terminate DIP counsel for their own benefit. As such, the fees and costs incurred by Smith Akins are reasonable, were of benefit to the estate, and are approved under 11 U.S.C. § 330(a).

## CONCLUSION

For the reasons stated herein, the Court finds the objections raised by Naples and the A.K. Trust are without merit. The Court has reviewed the Fee Application and finds that the charges are reasonable and were beneficial to the estate. Accordingly, it is hereby

**ORDERED** that the Fee Application (as reduced to meet the objection of the U.S. Trustee) is **APPROVED.**

**IT IS SO ORDERED.**